**ADELBERT M. BRYAN, Petitioner**

**v.**

**CAROLINE F. FAWKES, In her Official Capacity as Supervisor of Elections, and V.I. JOINT BOARDS OF ELECTIONS, Respondents**

Civil No. SX-14-CV-148

Superior Court of the Virgin Islands

Division of St. Croix

June 19, 2014

ADELBERT M. BRYAN, Frederiksted, St. Croix, USVI, *Pro se*.

ANGELA POLK, ESQ., Virgin Islands Department of Justice, Christiansted, St. Croix, USVI, *Attorney for Respondents*.

MOLLOY, *Judge*

## MEMORANDUM OPINION

(June 19, 2014)

**THIS MATTER** comes before the Court on Petitioner's Motion for Temporary Restraining Order filed on May 22, 2014, wherein Petitioner requested the issuance of both a temporary restraining order and a preliminary injunction. On May 23, 2014, this Court denied the request for a temporary restraining order and scheduled a hearing on the request for a preliminary injunction. The Court held a preliminary injunction hearing on June 11, 2014. For the reasons set forth below, the Court will deny Petitioner's request for a preliminary injunction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 19, 2014, the Virgin Islands Joint Boards of Elections (the "Joint Boards") held a meeting, when they passed a motion to permit candidates in the upcoming primary and general elections to identify themselves on the ballot in any way they see fit provided the name used does not exceed twenty-two (22) characters. Petitioner, Adelbert M. Bryan ("Bryan"), a member of the Joint Boards and Chairman of the St. Croix District Board of Elections, voted against the motion. On May 22, 2014, Bryan, filed a Petition for Writ of Mandamus in the Superior Court requesting an order directing Respondents "to comply with 18 V.I.C. § 492 and 18 V.I.C. § 501 and permit only the use of an individual's given name or nickname if he/she has always been known by that nickname on the official election ballot, but not both."[1] Pet. for Writ of Mandamus at

---

[1] Bryan's initial pleadings argued the candidates had to choose between using their nickname or their given name on the ballot. He supported that position by citing to a 1958 United States Attorney Opinion which opined that candidates running for office in the Virgin Islands are allowed to use his/her given name or nickname on an election ballot, but not both. *See* 3 V.I. Op. AG 310 (1958). Bryan has since changed his position. At the June 11, 2014, preliminary injunction hearing, Bryan argued that any use of a nickname violated Title 18 of the Virgin Islands Code and that only a candidate's "legal name" may be placed on the ballot. The relief sought, in light of Bryan's new position, would be a preliminary injunction to restrain the Supervisor of Elections from certifying anything other than a candidate's "legal name" on the ballot.

7. Bryan also filed a Motion for Temporary Restraining Order requesting the Court issue both a temporary restraining order and a preliminary injunction to prohibit "[Respondents] from violating the law by permitting candidates to use their given names and nicknames on the election ballot." Mot. for TRO at 6.

On May 23, 2014, the Court denied Bryan's request for a temporary restraining order because the motion failed to comply with the procedural requirements for issuing a temporary restraining order without notice to the adverse party. Bryan thereafter effected service upon Respondents and this matter was scheduled for a preliminary injunction hearing. On June 9, 2014, Respondents filed their opposition to Bryan's Motion for Temporary Restraining Order. A day later, Respondents moved to dismiss the Motion for Temporary Restraining Order. Bryan also filed a reply to the Respondents' opposition on June 11, 2014. A preliminary injunction hearing was held on June 11, 2014, wherein the parties were given the opportunity to introduce evidence and submit arguments in support of their respective positions. Bryan argued that preliminary injunctive relief should issue requiring the Supervisor of Elections to certify candidates by their legal name only. Respondents argued the election statutes do not clearly mandate the use of only a candidate's "legal name" on the ballot, and thus, the Supervisor of Elections' decision to allow a candidate to use his/her nickname on a ballot is not a violation of the election laws of the Virgin Islands.

## II. LEGAL STANDARD

■ Preliminary injunctive relief "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). When determining whether to grant preliminary injunctive relief, the Superior Court must consider:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013) (adopting injunction standard from the Third Circuit Court of Appeals). "A plaintiff seeking an injunction

24

must meet all four criteria, as '[a] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate.' " *Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 724 F.3d 377, 382 (3d Cir. 2013) (citing *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999)).

## III. DISCUSSION

### A. Reasonable Probability of Success on the Merits.

The first prong that Bryan must satisfy is that there is a reasonable probability that he will succeed on the merits. The underlying action is a petition for writ of mandamus which is governed by Title 5, Section 1361(a) of the Virgin Islands Code. This code section provides:

> [The Court] may issue a mandatory order to any inferior court, cor-poration, board, officer, or person, to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. Although such order may require the court, corporation, board, officer, or person to exercise its or his judgment, or proceed to the discharge of any of its or his functions, the order shall not control judicial discretion. The order shall not be issued in any case where there is a plain, speedy, and adequate remedy in the ordinary course of the law.

5 V.I.C. § 1361(a).

To obtain a writ of mandamus, "a petitioner must establish that it has no other adequate means to attain the desired relief and that its right to the writ is clear and undisputable." *In re People of the V.I.*, 51 V.I. 374, 382 (V.I. 2009). However, "even if the first two prerequisites have been met, the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *In re Joseph*, 2013 V.I. Supreme LEXIS 14, *8 (V.I. Apr. 5, 2013) (quoting *Cheney v. U.S. Dist. Court for the D.C.*, 542 U.S. 367, 380-81, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004)). "[A] writ of mandamus is a drastic remedy which should be granted only in extraordinary circumstances." *In re Morton*, 56 V.I. 313, 319 (V.I. 2012).

#### 1. Bryan Has Not Established That His Right to Relief is Clear and Undisputable.

"A party possesses a 'clear and indisputable' right when the relief sought constitutes a 'specific ministerial act, devoid of the exercise of

25

judgment or discretion.' " *In re People of the V.I.*, 51 V.I. at 387. In his Petition for Writ of Mandamus, Bryan asserts taxpayer standing under Title 5, Section 80 of the Virgin Islands Code. The statute provides that "a taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." 5 V.I.C. § 80. On May 19, 2014, the Joint Boards passed a motion to allow candidates to use any name, including nicknames, to identify themselves on the primary and general election ballots. Bryan argues that the placement of candidates' nicknames on the ballot violates the provisions of Title 18 of the Virgin Islands Code which he believes require the use of a candidate's legal name. Bryan seeks to restrain such an act through mandamus relief directing Respondents to comply with the provisions of 18 V.I.C. §§ 471, 492 and 501 by placing only a candidate's legal name on the primary and general election ballots.[2]

While taxpayers have the right to maintain an action to restrain illegal or unauthorized acts by a territorial official, it is unclear whether the placement of anything other than a candidate's legal name on the election ballot is an illegal act. Title 18, Section 471 of the Virgin Islands Code dictates the form of primary ballots and Title 18, Section 492 dictates the form of official election ballots. These code sections provide for the placement of candidates' "names" on the ballot.[3] Bryan argues that the use of the word "name" refers to a candidate's legal name such as that

---

[2] While the plea for relief in his pleadings indicates that Bryan would like to restrain the use of nicknames on the official (general) election ballot, his arguments at the preliminary injunction hearing indicated he wants to restrain the use of nicknames on the primary ballot as well.

[3] Title 18, Section 471 provides:

> The names of all candidates shall in all cases be arranged under the title of the office for which they are candidates, and be listed thereunder in the order determined by the casting of lots as provided by section 351 of this title . . . Opposite or under the name of each candidate, who is to be voted for by the electors at large, shall be printed the name of the election district in which such candidate resides; and opposite or under the name of each candidate who is to be voted for by the electors of an election district shall be printed the name of the polling district in which such candidate resides.

Title 18, Section 492(b) requires:

> The names of the candidates shall, in all cases, be arranged under the title of the office for which they are candidates, and shall be printed thereunder in the order determined by a casting of lots as provided by section 419 of this title. In addition, a photograph of the candidate shall appear directly next to the number of the candidate, clearly lined up

which appears on a birth certificate or a passport. Bryan also argued at the preliminary injunction hearing that in order for candidates' nicknames to be placed on the ballot, the Legislature of the Virgin Islands would have to create an express statutory allowance. Respondents argue that the word "name" has a generic meaning and that the Joint Boards did nothing illegal or unauthorized by permitting candidates to choose how they want to identify themselves on the ballot.

■ "Perhaps the most fundamental principle of statutory construction is that words in a statute must be given their ordinary meaning whenever possible." *Okeke v. Gonzales*, 407 F.3d 585, 593 (3d Cir. 2005). As the United States Supreme Court has explained: "in interpreting a statute a court should always turn to one cardinal canon before all others . . . courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992). Indeed, "[w]hen the words of a statute are unambiguous, then this first canon is also the last: 'judicial inquiry is complete.' " *Id.* (citing *Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698, 66 L. Ed. 2d 633 (1981)). "Words or provisions are ambiguous when 'they are reasonably susceptible of different interpretations.' " *Edwards v. A.H. Cornell and Son, Inc.*, 610 F.3d 217, 222 (3d Cir. 2010) (quoting *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005)).

The interpretation of the term "name" in the context of election law is a matter of first impression in the Virgin Islands. The term is not defined, within the election law context, anywhere in Title 18. Nor is it defined at Title 1, Section 41 of the Virgin Islands Code which defines common terms as used throughout the Virgin Islands Code. Terms and phrases that are undefined in the Virgin Islands Code "shall be read with their context and shall be construed according to the common and approved usage of the English language." 1 V.I.C. § 42. Black's Law Dictionary defines "name" as "[a] word or phrase identifying or designating a person or thing and distinguishing that person or thing from others." BLACK'S LAW DICTIONARY, 1119 (9th ed. 2009). Webster's II New College Dictionary similarly defines "name" as "[a] word or words by which an entity is designated and set apart from others." WEBSTER'S II NEW COLLEGE

---

on the voting machine and sample ballots, in a size and style that will adequately identify the candidate as determined by the Supervisor of Elections.

DICTIONARY, 726 (1999). A "legal name", on the other hand, is defined as "[a] person's full name as recognized in law". BLACK'S LAW DICTIONARY, 1119 (9th ed. 2009). Conversely, a "nickname" is "a shortened or familiar form of a proper name" or "a descriptive name added to or replacing the actual name of a person, place or thing." WEBSTER'S II NEW COLLEGE DICTIONARY, 737 (1999). Thus, both a "nickname" and a "legal name" are derivatives of a "name" and serve a name's function of identifying or designating a person or thing and setting it apart from others.

■ "When there is no case construing the statute at issue, courts may look for guidance to cases from other jurisdictions interpreting similar statutes." *Clarke v. Ross*, 57 V.I. 737, 760 (D.V.I. 2012) (citing *Liberty Lincoln-Mercury v. Ford*, 134 F.3d 557, 564 (3d Cir. 1998)). There is no single approach to interpreting the term "name" or "name of candidate" in other jurisdictions which use statutory language similar to the Virgin Islands Code. Other jurisdictions in which there is no case law, statute, or regulation interpreting the term "name" in the election context have come to varying conclusions as to whether the term permits the use of nicknames. In Iowa, for example, the use of the term "name" was interpreted in an Attorney General's Opinion to signify a Christian or given name combined with a surname, patronymic, or family name. Iowa Op. Att'y. Gen. 68-7-5, 1968 WL 172636 (Jul. 10, 1968). Consequently, the Attorney General advised the Secretary of State to not certify nomination papers containing nicknames. *Id.* The Tennessee Attorney General also examined election statutes which called for the placement of candidates "names" on nominating petitions and ballots and came to a different conclusion. Tenn. Op. Att'y. Gen. No. 85-273, 1985 Tenn. AG LEXIS 19 (Nov. 4, 1985). The Tennessee Attorney General opined that because there is no statutory or regulatory prohibition on the use of nicknames, it is legally permissible to use a nickname on the ballot or nominating petition as long as it is not misleading. *Id.* A recent Mississippi Attorney General's Opinion notes that the statutes there, which contain the term "name of candidate", are silent as to the use of nicknames on the ballot. Miss. Op. Att'y. Gen. No. 2007-00153, 2007 Miss. AG LEXIS 117 (Mar. 23, 2007). The opinion states that nicknames can be placed on the ballot only if "the officials in charge of the election determine, consistent with the facts, that the appearance of the nickname on the ballot is necessary in order to identify the candidate to the voters."

28

Id. Where the statutes and regulations are silent, these jurisdictions, despite using language similar to Virgin Islands election law, have approached the use of nicknames on the ballot in markedly different ways.[4]

■ Within the context of the Virgin Islands elections law, there are several indications that the Legislature intended the term "name" to have a generic meaning rather than the specific meaning of an individual's legal name. At the preliminary injunction hearing, Respondents presented the testimony of Caroline Fawkes, Supervisor of Elections, who testified that, based on her review of historical election documents going back as far as 1976, nicknames have been placed on election ballots in the Virgin Islands.[5] During that time the Legislature has been presumably aware that: 1) candidates for elected office sometimes identify themselves on the ballot by nickname; 2) that the statues governing the form of ballots make no specific provision for the use of nicknames; and 3) that Title 18's provisions calls for the placement of "the names of the candidates" on the ballots. The Legislature amended the statutes at issue in 1984[6] and 2002[7], yet chose not to explicitly bar the use of nicknames or to require the use of the candidates' "legal names." "[I]t may not always be realistic to infer approval of a judicial or administrative interpretation from congressional silence alone . . . [b]ut once an agency's statutory construction has been 'fully brought to the attention of the public and the Congress,' and the latter has not sought to alter that interpretation although it has amended the statute in other respects, then presumably the legislative intent has

---

[4] It is also worth noting that a majority of jurisdictions permit at least a limited use of nicknames on the ballot. Michigan, for example, has a statute that specifically disallows the use of nicknames but permits the use of a "recognized diminutive of the candidate's common law name, given name, or middle name." Mich. Comp. Laws Ann. § 168.560b(4) (West 2012). New York, where there is no statute speaking to the use of nicknames, prohibits the use of descriptive names unless there is a risk of voter confusion between candidates with similar names. *Toigo v. Columbia Cnty. Bd. of Elections*, 51 Misc. 2d 754, 273 N.Y.S.2d 781, 783 (Sup. Ct. 1966). West Virginia election regulations allow the use of nicknames, but place a number of limitations on the practice such as prohibiting nicknames that are titles, degrees, ranks, or slogans. W. Va. Code R. § 153-14-2 (2014).

[5] The 1958 United States Attorney Opinion opining that a candidate may use a nickname or a given name, but not both, indicates the practice may have been allowed in some form in the Virgin Islands from the very first elections following the 1954 Revised Organic Acts.

[6] *See* 1984 V.I. Sess. Laws 119-20, Act No. 4934, § 9(f).

[7] *See* 2002 V.I. Sess. Laws 273, Act No. 6503, § 22(b).

29

been correctly discerned." *United States v. Rutherford*, 442 U.S. 544, 554, 99 S. Ct. 2470, 61 L. Ed. 2d 68 (1979). From the Legislature's silence, despite revising the relevant statutes twice since 1976, it could be inferred that the Legislature intended the term "name" to include "nicknames" in addition to other types of names.

■ Further, throughout Title 18, the Legislature used the term "name". However, within the same title, there is a provision which requires voters to place their "Christian name"[8] on voter registration cards. 18 V.I.C. § 100(c). "Congress is presumed to act intentionally and purposely when it includes language in one section but omits it in another." *Estate of Bell v. Comm'r Internal Revenue Serv.*, 928 F.2d 901, 904 (9th Cir. 1991). "When Congress includes a specific term in one section of a statute but omits it in another section of the same Act, it should not be implied where it is excluded." *Arizona Elec. Power Coop. v. United States*, 816 F.2d 1366, 1375 (9th Cir. 1987) (citing *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)). Here, the Legislature used the specific term "Christian name" within Title 18, Chapter 5 of the election code. Throughout the rest of the election code, the Legislature chose to use a more generic term by referring to "names". While the provision using the term "Christian name" is unrelated to the identification of candidates on the ballot, it is arguably an indicator that when a particular type of name is required, the Legislature will call for that type of name specifically.

■ The novelty of the question, and the fact that the Virgin Islands election statutes are ambiguous as to the meaning of the term "name" and the use of nicknames, is reflected in the fact that Bryan himself initially asked this Court to mandate "the use of an individual's given name *or* the nickname if he/she has always been known by that nickname on the official election ballot, but not both." Pet. for Writ, of Mandamus at 7 (emphasis in original). At the preliminary injunction hearing, however, Bryan asserted that he was mistaken in his Petition and that, after further review, the law was clear that candidates may only place their legal name on the ballot. It is undisputed that it is the duty of the Supervisor of

---

[8] Black's Law Dictionary defines a "Christian name" as "[a]n individual's name or names given at birth, as distinguished from a family name. — Also termed given name; (in the Western tradition) first name; (in the Christian tradition) Christian name." BLACK'S LAW DICTIONARY, 1119 (9th ed. 2009).

Elections to certify the names of candidates for the primary and general election ballots. *See* 18 V.I.C. § 4(b)(2) (providing that "[t]he Supervisor of Elections, subject to the direction, control and supervision of the boards of elections, shall exercise all powers granted to, and perform all duties vested in him by [Title 18], including the duty to . . . certify to the boards of elections, for primaries and elections, the names of candidates for all public and territorial offices and membership on party committees . . ."). It is clear that there is a plainly defined and peremptory duty for the Supervisor of Elections to certify the names of candidates for the primary and general election ballots. However, given the ambiguity surrounding the meaning of the term "name", the Court holds that the Supervisor of Elections does not have a plainly defined and peremptory duty to certify only the "legal names" of candidates running for a public or territorial office in a primary or general election in the Virgin Islands.

 When the Legislature has spoken clearly as to a specific issue, courts, and the agencies tasked with administering the statute, "must give effect to the unambiguously expressed intent of [the Legislature]." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). However, when the statute is silent or ambiguous to a specific issue, such as the interpretation of the term "name" in the present case, "the question for the court is whether the agency's answer is based on a permissible construction of statute." *Id.* The Court must accord deference to the interpretation of a statute by an agency whose task it is to administer the statute. *See Chemical Mfrs. Ass'n v. Natural Res. Def. Council, Inc.*, 470 U.S. 116, 125, 105 S. Ct. 1102, 84 L. Ed. 2d 90 (1985). The Legislature delegated authority to the Joint Boards to "prescribe rules and regulations to achieve and maintain the maximum degree of correctness, impartiality, and efficiency of the procedures of voting, counting, tabulating, and recording votes, by the electronic or voting systems and methods provided bylaw." 18 V.I.C. § 524. Consistent with that authority, and the Joint Boards power to promulgate and issue uniform rules and regulations for the administration and enforcement of the election laws throughout the Virgin Islands, the Joint Boards passed a measure to allow candidates to identify themselves by any name they see fit. 18 V.I.C. § 47(13). In doing so, the Joint Boards has directed the Supervisor of Elections to certify any name a candidate chooses to identify himself or herself by. Bryan does not contest that the motion was properly passed according to the procedures governing the

Joint Boards. He contests the adoption of the motion on the fact that he believes it to be inconsistent with the laws of the Virgin Islands. Because the meaning of the term "name" is ambiguous in the statute, it seems that the Joint Boards' action merely clarified the administration of election laws in a manner consistent with their authority and based on a permissible construction of the relevant statutes.

Supervisor Fawkes has a ministerial duty to certify the names of candidates for the primary and general election ballots. Bryan however, has failed to establish clearly and indisputably, that this duty is to certify and place upon the ballot only the legal names of the candidates. Accordingly, Bryan has failed to show a clear right to the mandamus relief sought in his petition.

### 2. Bryan Failed to Establish that He Had No Other Adequate Means to Attain the Desired Result.

The issuance of a writ of mandamus is an extraordinary remedy granted only in the most compelling circumstances. Ordinarily, the availability of other adequate remedies is fatal to a petition for writ of mandamus. *In re LeBlanc*, 49 V.I. 508, 517 (V.I. 2008). Bryan failed to establish that he could not have obtained the desired relief through an action for declaratory judgment. The statute authorizing declaratory judgments, provides that:

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

5 V.I.C. § 1261.

As the petitioner, Bryan had the choice of the form of action. Rather than seek the extraordinary remedy of writ of mandamus, he could have sought declaratory judgment as to the legality of placing nicknames on the ballot. Title 5, Section 1269 authorizes the Court to order "a speedy hearing of an action for declaratory judgment" and "advance [the hearing] on the calendar." By pursuing declaratory judgment and injunctive relief,

Bryan would have had an adequate remedy within a similar timeframe. Because there was an alternative adequate remedy in the form of a declaratory action, Bryan is unlikely to succeed on his Petition for Writ of Mandamus.

### 3. Mandamus Relief is Not Appropriate Under the Circumstances

 Even if Bryan was able to satisfy the first two prerequisites for obtaining a writ of mandamus, the Court must still be satisfied that the writ is appropriate. "To determine whether a writ of mandamus is appropriate under the circumstances, [the Court] consider[s] factors including, but not limited to, the public interest, the importance or unimportance of the question presented, and equity and justice." *In re People of the V.I.*, 51 V.I. at 393.

 Under the present circumstances, the Court finds that mandamus relief is not appropriate. According to the Uniformed and Overseas Citizens Absentee Voting Act of 1986 ("UOCAVA"), the Territory of the Virgin Islands, through the Supervisor of Elections, is required to issue absentee ballots to military personnel and overseas citizens who are registered to vote at least forty-five (45) days prior to election day in federal elections. *See* 42 U.S.C. § 1973ff-1(a)(8) (providing that a State shall transmit a validly requested absentee ballot to an absent uniformed services voter or overseas voter not later than 45 days before an election for Federal office.). In even-numbered years, the Virgin Islands elects the Virgin Islands Delegate to the United States House of Representatives. 48 U.S.C. § 1712. On August 2, 2014, the first Saturday in August, the Virgin Islands will hold a primary election for the position of Delegate to Congress. *See* 18 V.I.C. § 232 (providing that primary elections must be held on the first Saturday in August). Accordingly, the deadline to mail absentee ballots was June 17, 2014. If relief is granted as requested by Bryan, the Territory will be unable to comply with federal law. There is not sufficient time, within the constraints imposed by UOCAVA, for the Supervisor of Elections to: 1) verify that all primary candidates are using their legal names on their candidate information sheets and nominating petitions/papers; 2) send out notices of defect to any candidate not using their legal name; 3) receive corrected information from candidates; 4) disqualify candidates who do not comply; 5) certify candidates by their legal names; 6) revise the layout of the primary ballot; and 7) proof, print,

and mail all absentee ballots. Granting relief would put the Territory in violation of UOCAVA and impact the ability of the Joint Boards to provide absentee voters with ballots in time for their votes to be counted in the primary. Finally, voters and candidates have relied on the use of nicknames for over thirty years and some candidates have been campaigning on their nicknames during this election cycle. To prohibit the use of nicknames at this late stage would impact the ability of voters to properly identify the candidates that they would either like to support or vote against. Ultimately, it appears that the extraordinary relief requested would be inappropriate under these particular circumstances. Therefore, at this stage of the litigation, it is this Court's conclusion that Bryan does not have a reasonable probability of success on the merits of his petition for writ of mandamus.

## B. Irreparable Harm

In order to obtain injunctive relief, Bryan must also demonstrate that he will be irreparably injured by the denial of injunctive relief. At the preliminary injunction hearing, Bryan argued that he will personally suffer irreparable harm because, believing the "legal name" to be the requirement, he submitted his nomination papers under the name Adelbert M. Bryan rather than another name such as Adelbert "Bert" Bryan, a name Bryan used when he ran for the office of Senator for the Virgin Islands Legislature in prior elections.[9] However, there is no evidence that Bryan wanted to use a name other than his legal name on the ballot and that the Supervisor of Elections denied any such request. Further, Bryan did not submit any evidence that the Supervisor of Elections would reject his request to use a nickname at this late juncture in light of the current controversy over the use of nicknames on an election ballot, especially since Bryan is running as an independent candidate in the general election. Thus, the Court finds that Bryan has failed to establish that he would be irreparably harmed if the Court does not grant injunctive relief.[10]

---

[9] Both parties recognized, and the Court takes judicial notice, that Bryan served as a Senator in the Virgin Islands Legislature for several terms.

[10] Bryan also argues that because he is asserting taxpayer standing through 5 V.I.C. § 80, he does not need to make a showing of irreparable harm to himself. Rather, because he is asserting the public interest in requiring territorial officers to comply with the law, the irrepa-

## C. Balancing the Harm to the Non-moving Party

The third factor for granting a preliminary injunction requires the Court to inquire into whether "granting preliminary relief will not result in even greater harm to the nonmoving party . . ." *Child Evangelism Fellowship of N.J., Inc. v. Stafford Twp. School Dist.*, 386 F.3d 514, 524 (3d Cir. 2004). As previously discussed, federal law requires that absentee ballots be sent out forty-five (45) days prior to the date of federal elections in order to ensure that military members and overseas citizens can participate. *See supra* Part III(A)(3). The Territory of the Virgin Islands has previously been sued by the United States of America for failing to comply with the forty-five day timeline in federal elections. *See United States of America v. Territory of the Virgin Islands et al.*, Case No. 3:12-CV-0069, Consent Decree dated September 7, 2012 (Docket No. 10). The Territory entered into a consent decree with the United States to address non-compliance with UOCAVA in the 2012 federal elections and to ensure timely compliance with the absentee ballot requirement in all future federal elections. *Id.* This is the first federal primary election in the territory since the consent decree was approved by the District Court.

██ If the Court were to issue a preliminary injunction, the Territory would be unable to comply with UOCAVA for the primary election. The relief requested would require the Supervisor of Elections, after the forty-five day deadline has already passed, to review all nominating petitions/papers and candidate information sheets to ensure that the listed names of the candidates are the legal names of the candidates, notify non-complaint candidates through notices of defect, obtain corrected information or disqualify candidates, certify candidates by their legal names, revise all ballots, and print and mail the revised absentee ballots. The harm to the Joint Boards and to the Territory for failing to comply with federal election law far exceeds the uncertain harms that Bryan has claimed are irreparable. Thus, the Court finds that this factor weighs against granting preliminary relief.

---

rable injury is to the public as a whole. He argues that if the Joint Boards is permitted to violate the laws it is tasked with overseeing it will undermine public confidence in the institution. However, because the statute is ambiguous, and the Joint Boards tried to clarify its meaning for the administration of election law in the territory, it does not appear that there is an irreparable harm to the public. Accordingly, this factor does not support preliminary injunctive relief.

35

## D. The Public Interest

 The public has a strong interest in agencies and officials complying with the laws that govern the territory. This interest is evidenced in the taxpayer standing statute which allows a member of the public to restrain illegal and unauthorized acts by territorial officials. 5 V.I.C. § 80. Here, the act that Bryan seeks to restrain is not illegal or unauthorized. The term "name" is ambiguous within the election context. The Joint Boards, using its authority to make rules and regulations for the administration and enforcement of elections, chose to clarify the ambiguous meaning by permitting candidates to identify themselves on the ballot in any way they see fit. The actions of the Joint Boards seem to be aligned with the public interest in complying with the laws that govern the territory.

 It has long been the practice of the Virgin Islands to allow candidates to identify themselves on the ballot with a nickname. From the time of the very first elections following the 1954 Revised Organic Act, the placement of nicknames on the ballot was considered permissible. *See* 3 V.I. Op. AG 310 (1958) (opining that election law likely permits the use of a nickname on the ballot but prohibits the use of both a nickname and a given name).[11] At the preliminary injunction hearing, Respondents presented testimony establishing that an initial review of past ballots revealed that nicknames have been used to identify candidates on the ballot as far back as 1976. During that time, the Legislature has taken no action to prevent the use of nicknames, even though the Legislature was presumably aware of the statutory language in Title 18. Over the course of at least thirty-eight years, the electorate has grown accustomed to the practice. There is certainly a public interest in preserving a practice which

---

[11] The Court notes that an advisory opinion by an Office of the Attorney General "does not bind state courts or local law enforcement authorities." *Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 395, 108 S. Ct. 636, 98 L. Ed. 2d 782 (1988). Further, the Supreme Court of the Virgin Islands has held that "the opinion of the Virgin Islands Attorney General — an officer of the Executive Branch — as to how Virgin Islands law should be interpreted is in absolutely no way binding on this Court or the Superior Court, since statutory interpretation is unquestionably a judicial power." *Galloway v. People*, 57 V.I. 693, 703 (V.I. 2012). Under Virgin Islands law, legal advice rendered by the Office of the Attorney General are advisory in nature and are not binding on an agency. *See* 3 V.I.C. § 114(a)(7). However, "[Attorney General opinions] are entitled to great weight, and in the absence of controlling authority, opinions of the attorney general are persuasive." 7 Am. Jur. 2d Attorney General § 10 (May 2009).

has become engrained in the political discourse of a culture which places high societal value on the use of nicknames in daily life.

▮ The use of nicknames also serves the public interest by assisting the electorate. "The purpose served by the candidate information allowed on the ballot is to enable the voter to identify the candidate, rather than serve the candidate's purposes." *Weiler v. Ritchie*, 788 N.W.2d 879, 888 (Minn. 2010). The practice increases the ability of voters to identify candidates, whether they want to vote for them or against them, based on the name by which the candidate is commonly known rather than a legal name that might not be known in the community. Nicknames also distinguish candidates with the same or similar names. Accordingly, because it is not clear that the Joint Boards has violated the laws they are tasked with administering and enforcing, the practice has become part of the political discourse, and the placement of nicknames on the ballot has beneficial impacts to the electorate, this Court finds that the public interest weighs against granting Bryan injunctive relief.

## IV. CONCLUSION

The Court concludes that Bryan has failed to demonstrate that he is entitled to the extraordinary remedy of a preliminary injunction. Accordingly, the Court will deny Bryan's request for preliminary injunctive relief. An appropriate Order follows.