**SBRMCOA, LLC, f/k/a SAPPHIRE BEACH RESORT AND MARINA CONDOMINIUM OWNERS ASSOCIATION, Individually and on behalf of its Members, Plaintiffs**

**v.**

**MOREHOUSE REAL ESTATE INVESTMENTS, LLC, and BEACHSIDE ASSOCIATES, LLC, Defendants**

Case No. ST-14-CV-138

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

March 12, 2015

169

171

172

JAMES M. DERR, ESQ., St. Thomas, USVI, *For the Plaintiffs*.

NEIL D. GOLDMAN, ESQ., Alexandria, Virginia, *For the Defendants*.

GREGORY H. HODGES, ESQ., Dudley, Topper and Feuerzeig, LLP, St. Thomas, USVI, *For the Defendants*.

DUNSTON, *Judge*

## MEMORANDUM OPINION

(March 12, 2015)

Pending before the Court is Plaintiffs' April 1, 2014, Renewed Emergency Motion for Temporary Restraining Order and Preliminary Injunction[1] and Plaintiffs' August 5, 2014, Motion for Preliminary Injunction.[2] For the following reasons, the Plaintiffs' motions will be DENIED.

---

[1] Both Defendants responded on April 30, 2014, in the form of an "Answer and Counter-claim."

[2] The Court previously agreed not to combine the motion for preliminary injunction with the motion for declaratory relief.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Plaintiffs Sapphire Beach Resort and Marina Condominium Owners Association and its operating entity SBRMCOA, LLC,[3] will be collectively referred to as the "COA." The Defendants are Morehouse Real Estate Investments, LLC, ("MREI"), the owner of the Hillside Property located in Smith Bay,[4] and Beachside Associates, LLC, ("Beachside").[5] At issue in this case is property owned by the Defendants near the Sapphire Beach Resort and Marina, including Parcels Nos. 16-1 Remainder, 11 Remainder, and 11-N Estate Smith Bay ("Beach Property").

Plaintiffs filed a six-count Complaint on March 10, 2014,[6] seeking a temporary restraining order, preliminary injunction, and declaratory judgment against the Defendants. By order entered March 13, 2014, the Court denied Plaintiffs' request for an *ex parte* temporary restraining order for failure to comply with the procedural requirement of providing notice to the adverse party. Plaintiffs filed a Renewed Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Renewed Emergency Motion")[7] on April 1, 2014. On April 2, 2014, the Court set a hearing for April 23, 2014, but the hearing was re-scheduled at the request of the Plaintiff.

---

[3] SBRMCOA, LLC, is a Virgin Islands limited liability company. Sapphire Beach Resort and Marina Condominium Owners Association, established pursuant to V.I. CODE ANN. tit. 5, § 901 (d), is an unincorporated association of the unit owners of the Sapphire Beach Resort and Marina Condominium.

[4] MREI is a limited liability company organized and existing under the laws of the State of Wyoming. MREI owns Parcels Nos. 16-1-2 and 16-1-6, Estate Smith Bay, East End, St. Thomas (the "Hillside Property"). MREI acquired the parcels by deed in 2010 from the prior owners, Bayside Quarter Resort, Inc., Okemo Limited Liability Company, and Hill Sapphire, LLC.

[5] Beachside is a limited liability company organized and existing under the laws of the United States Virgin Islands. Beachside purchased Parcels Nos. 11-E, 11-G, 11-N, 11-O, 11 Remainder, and 16-1 at a Marshal's sale held on December 18, 2013.

[6] An Amended Complaint was filed on August 5, 2014.

[7] Although the initial Complaint included six (6) counts for relief, the Renewed Emergency Motion specifically addressed only the issue of access to the pool.

On April 30, 2014, each of the Defendants filed an Answer and Counterclaim[8] that Plaintiffs answered on May 14, 2014. Plaintiffs filed a Motion to Advance Trial on the Merits with Hearing re Preliminary Injunction on June 9, 2014, which the Court denied on June 19, 2014.[9] On July 1, 2014, the Court held a preliminary injunction hearing at which it heard testimony, ultimately reserving its ruling, and ordered the parties to submit post-hearing briefs and proposed findings of fact and conclusions of law.

Pursuant to the Court's Order, the Defendants filed Proposed Findings of Fact and Conclusions of Law as to the Plaintiffs' Renewed Emergency Motion for Temporary Restraining Order and Preliminary Injunction and a Post-Hearing Brief in Opposition to Plaintiffs' Renewed Emergency Motion for a Temporary Restraining Order and Preliminary Injunction on July 31, 2014. On August 5, 2014, the Plaintiffs filed Proposed Findings of Fact and Conclusions of Law, a Post-Hearing Brief, a Motion for Leave to File First Amended Complaint, and a First Amended Complaint. On August 18, 2014, the Defendants filed a response to Plaintiff's Motion for Leave to File First Amended Complaint, consenting to the amendment.[10] In the response, the Defendants claimed they would be supplementing their Post-Hearing Brief and Proposed Findings of Fact and Conclusions of Law. However, the Court has not received any additional filings to date.

The parties' post-hearing filings create some confusion. The underlying action is based on a claim by the COA that it has several easements burdening various parcels owned by Beachside and MREI. The Defendants' Post-Hearing Brief responded to nine (9) items asserted by the Plaintiffs in their June 23, 2014, Reply to the Defendants Opposition to Advance Trial on the Merits. The Defendants assume the Plaintiffs intended to request a preliminary injunction corresponding to each of the

---

[8] MREI requested the Court to issue a declaratory judgment requiring the COA to remove its sign and guard shack from the Hillside Property or grant MREI the right to remove the sign and guard shack. Beachside requested the Court to declare that Beachside has the right to undertake repairs to the pool bar, to use and close off the pool deck for that purpose and to relocate the access easement and parking areas on Beachside's property, and that the COA does not have the right to maintain lighting facilities on Beachside's property.

[9] On June 19, 2014, the Defendants submitted a Response in opposition to the Motion and on June 23, 2014, the Plaintiffs filed a Reply to Opposition.

[10] The Court has not previously granted leave to amend, but does so now for the completeness of the analysis.

nine (9) items. The Plaintiffs' Post-Hearing Brief addresses legal issues arising from the Complaint and the Renewed Emergency Motion for Preliminary Injunction, rather than addressing each of the nine (9) items discussed by the Defendants. In the interest of fairness, justice, and judicial economy, the Court will base its analysis of preliminary injunctive relief on Plaintiffs' April 1, 2014, Renewed Emergency Motion for Temporary Restraining Order and Preliminary Injunction, the July 1, 2014, hearing, and the preliminary injunctive relief requested in the First Amended Complaint.[11]

The First Amended Complaint includes six causes of action, three of which request injunctive relief: (1) declaratory judgment against Defendant MREI declaring that the access road, sign, and guard shack for the COA are reasonably necessary to the use and enjoyment of the easements, including express and implied easements for ingress and egress burdening the Hillside Property and the Beach Property; (2) injunctive relief prohibiting MREI from taking any action to remove, impair, obstruct, or interfere in any way with the presently existing sign and guard shack; (3) declaratory judgment against Defendant Beachside for illegal restriction of parking on Beachside's property and illegal restriction of beach and pool access, together with declarations that beach security lighting and pool lights are reasonably necessary to the enjoyment of the easements and that Beachside must reconnect the power or allow the COA to do so at Beachside's sole cost and expense; (4) injunctive relief prohibiting Beachside from restricting parking areas and reasonable use and access to the beach and pool, as well as impeding the COA from reconnecting power to the beach and pool security lights, should Beachside elect not to reconnect the lights on its own; (5) declaratory relief against Beachside on behalf of the public declaring Beachside in violation of the Open Shorelines Act (12 V.I.C. § 401 *et seq.*) and CZT-106-84L, for blocking public access to Easement "AZ"; and (6) injunctive relief mandating that Beachside immediately remove all obstructions and cease any impediments to public use of historic public parking areas and public access to the beach and areas of the open shoreline.

---

[11] The Defendants have consented to the First Amended Complaint, and the period to file a response or amend their pleadings has passed. FED. R. CIV. P. 15, made applicable to the Superior Court through SUPER. CT. R. 7.

## I. Preliminary Injunction

 Preliminary injunctive relief "is an extraordinary remedy never awarded as of right."[12] The underlying rationale of a preliminary injunction is to "prevent or minimize irreparable loss of legal rights during the pendency of litigation."[13] Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders.[14] It is well established in the Virgin Islands that

> [t]o grant a preliminary injunction, the Superior Court must consider four factors:
>
> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.[15]

The burden is on the moving party to demonstrate entitlement to the issuance of a preliminary injunction under these factors.[16]

## II. *Banks* Analysis

As discussed above, it is well established in the Virgin Islands that to grant a preliminary injunction, the Superior Court must consider four factors.[17] The four factors currently used by courts developed from

---

[12] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008).

[13] John Leubsdorf, *The Standard for Preliminary Injunctions*, 91 HARV. L. REV. 525 (1978) (discussing the evolution of preliminary injunctions).

[14] FED. R. CIV. P. 65, made applicable to the Superior Court through SUPER. CT. R. 7.

[15] *Tip Top Constr. Corp. v. Gov't of Virgin Islands*, 60 V.I. 724, 739 (V.I. 2014) (citing *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013) (adopting injunction standard from the Third Circuit Court of Appeals)).

[16] *Gov't of V.I. v. V.I. Paving, Inc.*, 19 V.I. 177 (D.V.I. 1982) (noting the moving party must make a "clear showing" that it is entitled to injunctive relief).

[17] *Tip Top Constr. Corp.*, 60 V.I. at 739 (citing *Yusuf v. Hamed*, 59 V.I. 841, 847 (V.I. 2013)).

English chancery and evolved in American courts through equitable discretion.[18]

■ While several Virgin Islands cases have addressed motions for preliminary injunctions, it appears that no binding precedent exists in this jurisdiction regarding the appropriate standard for interpreting the four preliminary injunction factors.[19] In American jurisprudence, courts are split between two tests: (1) the "sequential test," requiring the moving party to fully satisfy each of the four injunction factors; and (2) the "sliding scale test," under which the four factors are balanced, with the moving party not having to satisfy every factor.[20] The Superior Court possesses, "in the absence of binding precedent . . . concurrent authority with [the Virgin Islands Supreme Court] to shape Virgin Islands common law."[21] Pursuant to *Government of the Virgin Islands v. Connor*,[22] this Court must undertake a *Banks* analysis consisting of a balancing of the following three nondispositive factors:

(1) whether any Virgin Islands courts have previously adopted a particular rule;

(2) the position taken by a majority of courts from other jurisdictions; and

(3) most importantly, which approach represents the soundest rule for the Virgin Islands.[23]

---

[18] Rachel A. Weisshaar, *Hazy Shades of Winter: Resolving the Circuit Split over Preliminary Injunctions*, 65 VAND. L. REV. 1011, 1018 (2012).

[19] No binding precedent has emanated from the Supreme Court of the Virgin Islands, the Appellate Division of the District Court (reviewing a V.I. case), or the Third Circuit (while serving as the *de facto* court of last resort in the Virgin Islands).

[20] Throughout American jurisprudence, courts apply different variations of the "sliding-scale test," weighing certain factors more than others. For example, in the Virgin Islands, one variation of the "sliding-scale test," "allows the moving party to obtain an injunction even where the probability of success on the merits is low if the court determines that the moving party's likelihood of irreparable harm is great and the nonmoving party's likelihood of irreparable harm is very low." *Yusuf v. Hamed*, 59 V.I. 841 n.3 (V.I. 2013).

[21] *Government of the Virgin Islands v. Connor*, 60 V.I. 597, 604 (V.I. 2014).

[22] *Id.* at 600.

[23] *Simon v. Joseph*, 59 V.I. 611 (V.I. 2013) (interpreting *Banks*).

## i. LOCAL COURTS THAT HAVE CONSIDERED THE ISSUE HAVE NOT RENDERED ANY DECISIONS UPON WHICH LITIGRANTS HAVE GROWN TO RELY.

The Court will first review whether any local courts have considered the appropriate test for applying the four factors. Although the following decisions are non-binding, the Court also considers whether litigants have grown to rely on the holdings.

### A. Third Circuit Court of Appeals

Recently, the Third Circuit made clear its intention to apply a sequential injunction test, requiring the moving party to fully satisfy each of the four injunction factors.[24] In the past, however, the Third Circuit has recognized that, "[w]hile these factors structure the inquiry . . . no one aspect will necessarily determine its outcome: Rather, proper judgment entails a 'delicate balancing' of all elements."[25]

### B. The District Court of the Virgin Islands

In discussing the applicable legal standard for injunctive relief, the District Court of the Virgin Islands recognized in *United States v. Christopher*[26] that a movant must prove each of the four factors.[27] Clarifying further, the District Court cited a District Court of New Jersey

---

[24] *Conestoga Wood Specialities Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2013 U.S. App. LEXIS 2706, *3 (3d Cir. Feb. 8, 2013): "The injunction shall issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *N.J. Hosp. Ass'n v. Waldman*, 73 F.3d 509, 512 (3d Cir. 1995); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244, 1254 (3d Cir. 1985).

[25] *Constructors Ass'n of W. Pa. v. Kreps*, 573 F.2d 811, 815 (3d Cir. 1978) (citing *Delaware River Port Authority v. Transamerican Trailer Transport Inc.*, 501 F.2d 917, 920, 923-24 (3d Cir. 1974); *see Brown v. Chote*, 411 U.S. 452, 456, 93 S.Ct. 1732, 36 L.Ed.2d 420 (1973) ("issuance of the injunction reflected the balance which that court reached in weighing those two factors"); *Oburn v. Shapp*, 521 F.2d 142 (3d Cir. 1975) (requiring "balancing of interests"); *A. O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976) quoting *United States Steel Corp. v. Fraternal Assn. of Steelhaulers*, 431 F.2d 1046, 1048 (3d Cir. 1963) ("a delicate balancing of the probabilities of ultimate success at Final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief").

[26] *United States v. Christopher*, No. CV 1999-196, 2013 U.S. Dist. LEXIS 179026, *8-9 (D.V.I. Dec. 20, 2013).

[27] *Id.*

case in which the court determined that proving irreparable harm alone is insufficient to support relief.[28]

## C. The Supreme Court of the Virgin Islands

The Supreme Court of the Virgin Islands has explicitly refused to take a position as to the appropriate standard for weighing the four preliminary injunction factors.[29] In *Allison Petrus, et al. v. Queen Charlotte Hotel Corp.*, the court adopted the "sequential" injunction standard used by the United States Court of Appeals for the Third Circuit.[30] However, in *Yusuf v. Hamed*,[31] the court recognized that it has applied variations of the "sliding-scale test" in the context of a request for a stay.[32] The "*Yusuf* sliding-scale test" lowers the threshold for establishing some factors if another factor is strongly shown.[33] In *Tip Top Constr. Corp. v. Gov't of the Virgin Islands, Dep't of Prop. & Procurement*, the court recognized the first factor, showing a reasonable probability of success on the merits, as the most important. This Court will label that approach the "*Tip Top* sliding-scale test."[34] The "*Tip Top* sliding-scale test" differs slightly from the traditional "sliding-scale test" and apparently authorizes injunctive relief even if all four factors are not met, further suggesting the court's preference of the "sliding-scale test."[35]

---

[28] *See Westmont Dev. Group, LLC v. Twp. of Haddon*, 2009 U.S. Dist. LEXIS 64467, *5 (D.N.J. July 24, 2009).

[29] *Tip Top Constr. Corp. v. Gov't of the Virgin Islands, Dep't of Prop. & Procurement*, No. S. Ct. Civ. 2014-0006, 2014 V.I. Supreme LEXIS 15, *9 (V.I. Feb. 14, 2014) (citing *Yusuf*, 59 V.I. at 847 n.3); *see Appleyard v. Governor Juan F. Luis Hosp. & Med. Ctr.*, 61 V.I. 578, 591 (V.I. 2014) (recognizing "the parties briefed the issue of whether this Court should adopt the sequential or sliding-scale test" and that jurisdictions are split, but declining to adopt either test).

[30] *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012).

[31] 59 V.I. 841 (V.I. 2013).

[32] *Id., see, e.g., Rojas v. Two/Morrow Ideas Enter.*, S. Ct. Civ. No. 2008-0071, 2009 V.I. Supreme LEXIS 6, *5 (V.I. Jan. 22, 2009) (recognizing "that a party may obtain a stay pending appeal even where the party makes a weak showing on the likelihood of success if the 'balance of the equities' favors a stay.").

[33] *Id.*

[34] *Tip Top Constr. Corp*, 2014 V.I. Supreme LEXIS 15 at *2 (involving a motion for stay pending appeal). The standard for obtaining a stay pending appeal is essentially the same as for obtaining a preliminary injunction. *See Yusuf v. Hamed*, 59 V.I. 841, 848 (V.I. 2013).

[35] *See id.*

Additionally, while there have been several appeals in which the non-moving party has challenged the movant's reasonable probability of success on the merits,[36] it appears that no binding precedent exists in this jurisdiction addressing whether a preliminary injunction can be granted without a moving party successfully showing its ability to succeed on the merits.[37]

## D. The Superior Court

The Superior Court has not uniformly applied a standard for interpreting the four preliminary injunction factors.[38] Some cases clearly employ the "sequential injunction test,"[39] while others use variations of the "sliding-scale." balancing the four factors.[40] For example, in

[36] "Because we conclude that *Tip Top* has shown that it is likely to succeed on its claim . . . and since the Government has not challenged the Superior Court's holding that the remaining three factors all favor the grant of a preliminary injunction, we reverse." *Tip Top Constr. Corp. v. Gov't of the Virgin Islands, Dep't of Prop. & Procurement*, 60 V.I. 724, 738 (V.I. 2014); "The court correctly found that Queen Charlotte met its burden to show that it has a reasonable likelihood of success on the merits . . . we need go no further to affirm." *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012).

[37] The Virgin Islands Supreme Court decision in *Connor*, suggests that a *Banks* analysis is appropriate in any instance where there is not binding precedent, regardless of whether the issue involves the common law.

[38] In *Tip Top Constr. Corp.*, the Supreme Court noted it was "not clear whether the Superior Court applied a 'sequential injunction test,' in which a movant must prove all four preliminary injunction factors, or the 'sliding-scale test,' where the four factors are balanced and weighed and an injunction may be granted even if all four factors are not met." 60 V.I. at 739 n.3.

[39] *Appleyard v. Governor Juan F. Luis Hosp. & Med. Ctr.*, No. SX-14-CV-282, 2014 V.I. LEXIS 56, *5 (V.I. Super. July 28, 2014) ("A plaintiff seeking an injunction must meet all four criteria, as [a] plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." (citation omitted)); *Bryan v. Fawkes*, 62 V.I. 19, 24-25 (V.I. Super. 2014); *Bertrand v. Cordiner Enterprises, Inc.*, No. ST-08-CV-457, 2012 V.I. LEXIS 55, *12 (V.I. Super. Oct. 29, 2012) (the movant must establish all four factors to be entitled to a preliminary injunction); *Hamed v. Yusuf*, 58 V.I. 117, 129 (V.I. Super. 2013) *aff'd in part, vacated in part*, 59 V.I. 841 (V.I. 2013) ("The Court cannot issue a preliminary injunction unless on the basis of the evidence on the record, Plaintiff prevails as to each of the four factors . . . .").

[40] *VI 4D, LLLP v. Crucians in Focus, Inc.*, 57 V.I. 143, 150 (V.I. Super. 2012) ("In considering a motion for preliminary injunctive relief, a court must carefully weigh four factors . . . ."); *Gov't of Virgin Islands v. Virgin Islands Bd. of Educ.*, No. ST-14-CV-133, 2014 V.I. LEXIS 34, *3 (V.I. Super. June 23, 2014) (where the court denied the motion without analyzing the factors for an injunction); *Newman v. McKay*, 58 V.I. 170, 175 (V.I. Super. 2013) (where the

*Appleyard v. Governor Juan F. Luis Hosp. & Med. Ctr.*,[41] the court required the plaintiff to meet all four criteria, while in *Barshinger v. Legislature of United States Virgin Islands*,[42] the court employed a standard balancing the four factors.

### ii. CIRCUITS AND STATES ARE SPLIT IN THEIR APPLICATION OF THE SEQUENTIAL TEST AND VARIATIONS OF THE SLIDING SCALE.

Next, the Court considers the way other jurisdictions have resolved a particular question.[43] Following the United States Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*,[44] there remains significant disagreement regarding whether *Winter* mandated a sequential test. Circuits remain split in their application between the "sequential test" and variations of the "sliding-scale test." Further, another variation of the "sliding-scale test," discussed briefly in Justice Ginsberg's dissent in *Winter* (the "*Ginsberg* sliding-scale test"), involves "awarding relief based on a lower likelihood of harm when the likelihood of success is

---

court assessed the four factors for injunctive relief, recognizing that the plaintiff had no likelihood of success on the merits and that the analysis could reasonably end at that point); *Virgin Islands v. Carty*, No. ST-08-CR-424, 2010 V.I. LEXIS 6, *3 (V.I. Super. Feb. 10, 2010) ("When determining whether an injunction should be issued, the following factors are considered . . . ."); *see Barshinger v. Legislature of United States Virgin Islands*, No. ST-11-CV-024, 2013 V.I. LEXIS 8, *7 n.14 (V.I. Super. Feb. 19, 2013) (where the court denied a motion to dismiss).

[41] No. SX-14-CV-282, 2014 V.I. LEXIS 56, *5 (V.I. Super. July 28, 2014) ("A plaintiff seeking an injunction must meet all four criteria . . . [a] failure to establish any element in its favor renders a preliminary injunction inappropriate." (citation omitted)).

[42] 2013 V.I. LEXIS 8 at *7 n.14 ("When considering a motion for injunctive relief, the Court must balance the following factors: (1) the threat of irreparable harm to the [plaintiff] if the injunction is denied, (2) the balance of the harm between the parties if granted, (3) the probability of the [plaintiffs] success on the merits, and (4) the public interest." (citation omitted)).

[43] *Connor*, 60 V.I. at 604.

[44] 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (holding that a plaintiff seeking a preliminary injunction must always show that irreparable harm is "likely," not merely "possible" even if they are able to demonstrate a strong likelihood of success on the merits).

very high."[45] The Virgin Islands Supreme Court even identified the split among circuits in *Yusuf*.[46]

The Federal Circuits are split. The Fourth Circuit holds that *Winter* requires a "sequential test,"[47] while the Second,[48] Seventh,[49] and Ninth[50] Circuits continue to employ the "sliding scale" test by balancing the factors. For example, in contrast with Justice Ginsberg's dissent in *Winter*, the Seventh Circuit recently adopted the approach that, under the "sliding scale" test, a weaker claim of probability of success on the merits can still justify a preliminary injunction where the level of irreparable harm that could be prevented by the injunction is great.[51] The Fifth,[52] Tenth,[53] Eleventh,[54] and Federal Circuits[55] are inconsistent in their

---

[45] "Consistent with equity's character, courts do not insist that litigants uniformly show a particular, predetermined quantum of probable success or injury before awarding equitable relief." *Winter*, 555 U.S. at 51 (citing 11A C. WRIGHT, A. MILLER, & M. KANE, FEDERAL PRACTICE AND PROCEDURE § 2948.3, p. 195 (2d ed. 1995)).

[46] *See Yusuf v. Hamed*, 59 V.I. 841, 847 ("*Compare Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009) (holding that *Winter* requires a sequential test), *vacated on other grounds by* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), *with Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011) ('[W]e join the Seventh and the Second Circuits in concluding that the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*.')").

[47] *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009) (holding that *Winter* requires a sequential test), *vacated on other grounds by* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010).

[48] *See, e.g., Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d Cir. 2010).

[49] *See, e.g., Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009).

[50] *See, e.g., Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).

[51] *Hoosier Energy Rural Elec.*, 582 F.3d at 725.

[52] *See, e.g., Walgreen Co. v. Hood*, 275 F.3d 475, 477 (5th Cir. 2001) (denying preliminary injunction because "there is no substantial likelihood that [plaintiff] will prevail on the merits").

[53] *See, e.g., Oklahoma ex rel. Okla. Tax Comm'n v. Int'l Registration Plan, Inc.*, 455 F.3d 1107, 1113 (10th Cir. 2006).

[54] *See, e.g., Horton v. City of St. Augustine*, 272 F.3d 1318, 1334 (11th Cir. 2001) (reversing · injunction because movant was not likely to succeed on merits).

[55] *See, e.g., Jack Guttman, Inc. v. Kopykake Enter.*, 302 F.3d 1352, 1356 (Fed. Cir. 2002) (recognizing a trial court may deny a motion based on a moving party's failure to show any one of the four factors).

application of a sliding scale test, but continue to consider, rather than require, the four traditional factors.

State Courts also remain split in their application of the preliminary injunction factors, and a majority rule cannot be determined.[56] While some states find a failure to show harm is enough to deny a motion for preliminary injunction,[57] other states use the probability of success on the merits as the determinative factor in their analysis.[58] When considering motions for preliminary injunctions, another group of states utilize sliding scale tests relying on as few as two factors, excluding the factor considering the public interest,[59] in contrast to still other states that

---

[56] *See, e.g., Alsworth v. Seybert*, 323 P.3d 47, 54 (Alaska 2014) ("A plaintiff may obtain a preliminary injunction by meeting either the balance of hardships or the probable success on the merits standard."); *White v. John*, No. 1111554, 164 So. 3d 1106, 2014 Ala. LEXIS 144 (Ala. Sept. 26, 2014) (requiring a "sequential test," also considering if the plaintiff has an adequate remedy at law); *Aqleh v. Cadlerock Joint Venture II, L.P.*, 299 Conn. 84, 10 A.3d 498 (2010) ("A party seeking injunctive relief must demonstrate that: (1) it has no adequate remedy at law; (2) it will suffer irreparable harm without an injunction; (3) it will likely prevail on the merits; and (4) the balance of equities tips in its favor."); *1650 Realty Associates, LLC v. Golden Touch Mgmt., Inc.*, 101 A.D.3d 1016, 1017-18, 956 N.Y.S.2d 178, 180 (2012) (requiring a party to demonstrate by clear and convincing evidence a likelihood of success on the merits, irreparable injury, and a balancing of equities in the movant's favor); *K & K of Va., LLC v. Brinkley*, 87 Va. Cir. 4 (2013) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.").

[57] *See, e.g., Inland Ryan, LLC v. Halle Properties, LLC*, No. A12-0165, 2012 Minn. App. Unpub. LEXIS 994, *8 (Minn. Ct. App. Oct. 9, 2012) ("The failure to show irreparable harm is alone enough to deny a motion for a preliminary injunction."); *Boone Creek Properties, LLC v. Lexington-Fayette Urban Cnty. Bd. of Adjustment*, 442 S.W.3d 36, 39 (Ky. 2014) ("A finding of irreparable harm is an essential prerequisite for the issuance of a temporary injunction.").

[58] *See, e.g., Kinney v. Barnes*, 443 S.W.3d 87, 94 (Tex. 2014) *cert. denied*, 135 S. Ct. 1164, 190 L. Ed. 2d 914 (2015) ("Absent a showing of a likelihood of success on the merits, a temporary injunction may not issue."); *Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010).

[59] *See, e.g., Nelson v. Avondale HOA*, 172 Cal. App. 4th 857, 861, 91 Cal. Rptr. 3d 726, 729-30 (2009) ("[T]he trial court considers two related factors: (1) the likelihood that the plaintiff will prevail on the merits of its case at trial, and (2) the interim harm that the plaintiff is likely to sustain if the injunction is denied as compared to the harm that the defendant is likely to suffer if the court grants a preliminary injunction."); *Eaton v. Fed. Nat. Mortgage Ass'n*, 462 Mass. 569, 574, 969 N.E.2d 1118, 1123 (2012) ("In considering a request for a preliminary injunction the judge evaluates the moving party's chance of success on the merits and its claim of injury.").

employ sequential tests requiring satisfaction of up to six factors.[60]

### iii. THE BEST RULE FOR THE VIRGIN ISLANDS IS A HYBRID SLIDING SCALE TEST

■ The third and most important *Banks* factor — which approach represents the soundest rule for the Virgin Islands — weighs strongly in favor of adopting a variation of the "sliding-scale" test. A preliminary injunction is an extraordinary remedy, offering equitable relief.[61] However, "[f]lexibility is a hallmark of equity jurisdiction."[62] The best approach would appear to require the Virgin Islands courts to balance these two conflicting concepts in fashioning equitable relief.

As previously discussed, the Virgin Islands Supreme Court has applied a sliding-scale test in cases where the court determined the moving party's likelihood of irreparable harm is great and the non-moving party's likelihood of irreparable harm is very low.[63] While the *"Yusuf* sliding-scale test"* lowers the threshold standards for certain factors, the *"Tip Top* sliding-scale test"* allows the issuance of an injunction "even if all four factors are not met" while recognizing the first factor, a reasonable

---

[60] *See, e.g., SEIU Healthcare Pennsylvania v. Com.*, 104 A.3d 495, 501-02 (Pa. 2014) ("The six essential prerequisites that a moving party must demonstrate to obtain a preliminary injunction are as follows: (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest."); *Roxana Cmty. Unit Sch. Dist. No. 1 v. WRB Ref, LP*, 2012 IL App (4th) 120331, ¶ 23, 973 N.E.2d 1073, 1079-80 (2012); *Inland Ryan, LLC v. Halle Properties, LLC*, No. A12-0165, 2012 Minn. App. Unpub. LEXIS 994, *7 (Minn. Ct. App. Oct. 9, 2012); *Dallman v. Ritter*, 225 P.3d 610, 621 (Colo. 2010).

[61] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (Ginsberg, J., dissenting).

[62] *Id.* at 51.

[63] The *"Yusuf* sliding-scale test,"* allows "the moving party to obtain an injunction even where the probability of success on the merits is low. . . ." *Yusuf*, 59 V.I. at 847 n.3 (citing *Rojas v. Two/Morrow Ideas Enters.*, S.Ct. Civ. No. 2008-0071, 2009 V.I. Supreme LEXIS 6, *5 (V.I. Jan. 22, 2009)).

probability of success on the merits, as the most important.[64] The lack of a majority test among state courts and their failure to consistently employ a single set of factors distinct from those utilized by circuit courts, further supports the need for the Virgin Islands to implement a sliding-scale test under which factors can be weighed depending on the unique circumstances of an individual case. Additionally, after the United States Supreme Court's decision in *Winter*, it appears that a plaintiff seeking a preliminary injunction must always show that irreparable harm will be likely in the absence of injunctive relief.

■ Weighing all of the *Banks* factors, and recognizing there may be situations where the balance of the equities favors injunctive relief even where one factor has not been proven, this Court will apply a hybrid of both the *Tip Top* and *Yusuf* variations of the sliding-scale test to further the interests of justice. The test, which the Court finds to be the soundest for the Virgin Islands, requires clear and convincing evidence of the following:

A. (1) Whether the movant has shown a reasonable probability of success on the merits; and

(2) whether the movant will be irreparably injured by denial of the relief;

B. If so, the remaining factors are considered and balanced against the others:

(3) whether granting preliminary relief will result in even greater harm to the nonmoving party;

(4) whether granting the preliminary relief will be in the public interest.

## ANALYSIS

■ When addressing a reasonable probability of success on the merits, the movant must show that it has "a reasonable chance, or probability, of winning," not that it will actually prevail on the merits at trial.[65] In order

---

[64] *Tip Top Constr. Corp.*, 60 V.I. at 732 n.3.

[65] *Yusuf*, 59 V.I. at 847 (citations omitted); *see also Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) ("At the preliminary injunction stage, a plaintiff must show more than a mere possibility of success, but need not prove his case in full." (internal quotation marks and citation omitted)).

to do this, the movant must introduce evidence supporting each element of the cause of action.[66] The burden is on the party seeking relief to demonstrate that it is entitled to a preliminary injunction under the stated factors.[67]

■ When considering whether the movant will be irreparably injured by denial of the relief, irreparable harm occurs where there is "certain and imminent harm for which a monetary award does not adequately compensate."[68] If monetary damages are difficult to ascertain, they are considered inadequate.[69]

■ In deciding whether granting preliminary relief will result in even greater harm to the nonmoving party, the court determines "whether, and to what 'extent[,] . . . the [nonmoving parties will suffer irreparable harm if the preliminary injunction is issued.' "[70] Additionally, the court considers whether the injunction would destroy the status quo, as "[o]ne of the goals of the preliminary injunction analysis is to maintain the status quo, defined as 'the last, peaceable, noncontested status of the parties.' "[71]

■ Finally, when considering whether granting the preliminary relief will be in the public interest, courts should, "pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[72] Courts must attempt to maintain "specific acts presumptively benefiting the public . . . until the merits [can] be reached and a determination made as to what justice require[s]."[73]

Applying the hybrid sliding-scale test, the Court will first consider whether the COA has shown a reasonable probability of success on the

---

[66] *Punnett v. Carter*, 621 F.2d 578, 583 (3d Cir. 1980).

[67] *Gov't of V.I. v. V.I. Paving, Inc.*, 19 V.I. 177 (D.V.I. 1982) (noting the moving party must make a "clear showing" that they are entitled to injunctive relief).

[68] *Yusuf*, 59 V.I. at 854 (citing *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 114 (2d Cir. 2003)). In Defendants' Post-Hearing Brief, Defendants mistakenly characterize irreparable harm as the first and most important element of a preliminary injunction test, without citing any supporting case law.

[69] *Id.* (citing *Danielson v. Local 275, Laborers Int'l Union of N. Am., AFL-CIO*, 479 F.2d 1033, 1037 (2d Cir. 1973)).

[70] *Id.* at 856 (citing *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 727 (3d Cir. 2004)).

[71] *Id.*

[72] *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 72 L. Ed. 2d 91 (1982)).

[73] *Yusuf*, 59 V.I. at 842 (citations omitted).

merits for each of the legal claims and whether Plaintiffs will be irreparably injured by denial of relief. If so, the Court will then balance the remaining two factors. Although the analysis would usually end if the Court determines the movant is unable to show the first two factors, the Court in this case will continue its analysis of the remaining factors for the benefit of the parties.

## I. THE ENTRANCE, SIGN, PLANTER, AND GUARD SHACK

 The Plaintiffs claim easements for ingress and egress over Defendants' property, asserting that Parcels Nos. 16-1 Remainder and 11 Remainder are burdened by an express easement over the roadway depicted in Plaintiffs' Exhibit 14 and that Parcels Nos. 16-1-2 and 16-1-6 are burdened by an implied easement by prior use, as well as for placement of a sign, planter, and guard shack.[74] Both parties agree that the roadway entrance off Smith Bay Road and the sign and planter marking the entrance are located on Parcels Nos. 16-1-2 and 16-1-6 (Plaintiffs' Exhibit 14). Although Plaintiffs' motion separates discussion of the claims for injunctive relief involving the sign, planter, and guard shack from those concerning the entrance and access road, the Court will consider all those claims together since the asserted basis for the legal claims is the same.

### 1) Reasonable Probability of Success on the Merits

### A. Implied Easement

Plaintiffs must first demonstrate that they have a reasonable probability of success on the merits on their claim of an implied easement by prior use regarding the roadway, planter, sign, and guard shack. While the Plaintiffs state a legal standard for an implied easement by prior use in their Post-Hearing Brief, Plaintiffs' arguments on this issue, and throughout their motions, are not supported with citations to any binding

---

[74] An easement is a "nonpossessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." *Marvin M. Brandt Revocable Trust v. United States*, 134 S. Ct. 1257, 1265, 188 L. Ed. 2d 272 (2014) (citing RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2(1) (1998)).

legal authority.[75] Further, it appears that the Virgin Islands Supreme Court has yet to consider the appropriate rule of law for implied easements.

### i. *Banks* Analysis of the Restatement (Third) of Property (Servitudes) § 2.12

 Conducting a *Banks* analysis, the Court finds that the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 is an expression of the common law of this jurisdiction and finds it proper to adopt and apply § 2.12 here. The RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 provides that:

> Unless a contrary intent is expressed or implied, the circumstance that prior to a conveyance severing the ownership of land into two or more parts, a use was made of one part for the benefit of another, implies that a servitude was created to continue the prior use if, at the time of the severance, the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use.

> The following factors tend to establish that the parties had reasonable grounds to expect that the conveyance would not terminate the right to continue the prior use:

> > (1) the prior use was not merely temporary or casual; and
> > (2) continuance of the prior use was reasonably necessary to enjoyment of the parcel, estate, or interest previously benefited by the use; and

---

[75] "Although only the Superior Court is required to conduct *Banks* analyses, litigants are reminded of the requirements in LOC. R. CIV. P. 11.1. By signing a motion or supporting memoranda, an attorney certifies that the applicable law in this jurisdiction has been cited, including authority for or against the position being advocated by counsel. LOC. R. CIV. P. 11.1(a). Therefore, parties are reminded that, in the absence of discussion addressing: (1) whether cited authority is binding upon this Court or presented as persuasive authority, and (2) why the Court should adopt this view as the 'appropriate . . . rule based on the unique characteristics and needs of the Virgin Islands' *and* the parties, the Court may strike motions and responses as fatally deficient." *People of the Virgin Islands v. Willis*, No. ST-14-CR-74, 61 V.I. 60, 74-75 (V.I. Super. 2014) (citations omitted). *See also* LOC. R. CIV. P. 11.1; Virgin Islands Rules of Professional Conduct Rule 211.3.1 ("A lawyer shall not . . . assert or controvert an issue . . . unless there is a basis in law and fact for doing so . . . which includes a good faith argument for an extension, modification or reversal of existing law"); *Benjamin v. Coral World V.I., Inc.*, No. ST-13-CV-294, 2014 V.I. LEXIS 35, *16 n.38 (V.I. Super. June 12, 2014) (warning litigants that simply citing the Restatements and other non-binding authority without any discussion of *Banks* may result in sanctions).

(3) existence of the prior use was apparent or known to the parties.

 Considering the first *Banks* factor, while several Virgin Islands cases have addressed a situation involving an easement, it appears that no Virgin Islands jurisprudence exists addressing the specific instance of an implied easement by prior use.[76] Historically, courts in the Virgin Islands have found that establishing a "right of way by pre-existing uses" included a showing of: (1) unity and subsequent severance of title; (2) apparentness of use; (3) permanency of use; (4) continuousness of use; and (5) necessity of use.[77] All five of these elements are incorporated in § 2.12, with necessity of use remaining the most ambiguous. Although implied easements are not favored by the law,[78] the necessity of the easement is one of the critical factors to be considered in determining whether an easement is implied.[79] Further, the "elements for implied easements and easements by necessity are essentially the same. Both types of easements require unity of ownership, the subsequent severance of the two parcels, and a showing of necessity."[80]

 Lastly, although there is no binding precedent for implied easements, there is precedent regarding notice. 28 V.I.C. § 124, states:

> [e]very conveyance of real property hereafter made within the Virgin Islands which is not filed for record shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance is first duly recorded. 28 V.I.C. § 124.

Virgin Islands courts have consistently recognized this as a race-notice statute, "where a failure to record an easement . . . renders it unenforceable

---

[76] *See, e.g., Caribbean Healthways, Inc. v. James*, 55 V.I. 691, 699 (V.I. Super. 2011) (where the court properly summarily rejected the claim for an implied easement because it was never correctly before the Superior Court to decide).

[77] *Rouss v. Gov't of Virgin Islands ex rel. Harding*, 13 V.I. 203, 214 (Terr. V.I. 1977); *McIntosh v. Prince*, No. CIV. 102-71, 1973 WL 354932, at *2 (V.I. Mun. June 15, 1973) ("As a general rule owners of parcels into which the dominant tenement has been divided have the right to use right of ways created within the subdivision.").

[78] *McIntosh v. Prince*, 1973 WL 354932, at *2 (citing 25 AM. JUR. 2D *Easements* Sec. 26).

[79] *Smith v. Benjamin*, 30 V.I. 51, 58 (Terr. V.I. 1994) (request for preliminary injunction denied because plaintiff had access to her parcel via another road).

[80] 11 AM. JUR. PROOF OF FACTS 3d 601 (originally published in 1991) (collecting cases).

against a subsequent purchaser, but only if that purchaser lacks notice of the encumbrance."[81] The Virgin Islands Supreme Court has recognized that for purposes of Section 124 "[n]otice may be actual or constructive, and actual notice may be express or implied."[82]

▪ The second *Banks* factor — the position taken by a majority of the courts from other jurisdictions — weighs favorably towards the adoption of the Restatement provision. There is little disagreement among jurisdictions that a claim for an implied easement requires common ownership and subsequent severance.[83] In considering the first factor of § 2.12 (whether the prior use was not merely temporary or causal), jurisdictions have found that although the use does not need to be daily, limited or sporadic use that is not necessary has failed to satisfy this factor.[84] Under the second factor, the reasonable necessity of the easement has been defined to mean that it must be necessary for the "convenient and comfortable enjoyment of the property as it existed when the severance was made, and there can be no other reasonable mode of enjoying the dominant tenement without the easement."[85] The rule stated in the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12, that reasonable necessity is required whether the implied easement is in favor of the grantor or grantee, is the majority rule.[86] "Only affirmative rights to use land in the possession of another can be implied on the basis of prior use."[87] A minority of jurisdictions, including, Michigan, Washington D.C., Nebraska, New York, Texas, and Vermont, interpret the rule to mean that "reasonable necessity is required for implied easements in favor of the grantee (implied by grant), but that strict necessity is

---

[81] *Brodhurst v. Frazier*, 57 V.I. 365, 366 (V.I. 2012).

[82] *Id.* (citing *Netsky v. Sewer*, 205 F. Supp. 2d 443, 457 (D.V.I. 2002)).

[83] *See* RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 (2000) (collecting cases).

[84] *See id.*

[85] 25 AM. JUR. 2D *Easements and Licenses* § 27.

[86] Comments, RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 (collecting cases). Majority states include: Alabama, Alaska, Arkansas, California, Connecticut, Florida, Hawaii, Idaho, Illinois, Indiana, Kansas, Kentucky, Maryland, Maine, Massachusetts, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon ("In order to give rise to an implied easement, it is not necessary that the easement be an absolute necessity, but it is sufficient if there is a reasonable necessity for the easement." *Rose v. Denn*, 188 Ore. 1, 213 P.2d 810 (1950)), South Carolina, Tennessee, Utah, and Virginia. *Id.*

[87] *Id.*

required for implied easements in favor of the grantor (implied by reservation)."[88] Lastly, considering the third factor of § 2.12, the comments to the Restatement define notice as apparent, known, or reasonably inferred.[89] The Court finds it persuasive that it appears that a majority of jurisdictions have adopted similar common law principles as those outlined in the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12.

Finally, the third and most important *Banks* factor — which approach represents the soundest rule for the Virgin Islands — weighs strongly in favor of adopting the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 as a reflection of common law in this jurisdiction. Historically, the necessity of an easement has been a critical factor, and, as previously discussed, the majority of jurisdictions favor the position that reasonable necessity, rather than strict necessity, is required in favor of the grantor or grantee. Additionally, the Virgin Islands Supreme Court has adopted the same position as that stated in the comments to the Restatement and recognized that notice may be actual or constructive.[90] As a result, weighing all of the *Banks* factors, the Court finds the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12, incorporating the majority rule requiring the necessity of the easement, to be the soundest rule for this jurisdiction.

Applying the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 to this case, the COA must demonstrate that the use of Parcels Nos. 16-1-2 and 16-1-6 was under unity of ownership, with subsequent severance, and the continued use of the easement was necessary for the enjoyment of the parcel. The COA has shown that the use was not merely temporary and that the use was apparent or known. The Plaintiffs correctly state that unity of ownership is not at issue in this case, as there was unity of title of the parcels under Bayside before the property was severed and acquired by Beachside, MREI, and the COA. The continuous use factor also appears to not be disputed, as the road, sign, planter, and

---

[88] *Id.*

[89] *Id.* "If the use was apparent, it may reasonably be inferred that the parties knew of it."

[90] *Brodhurst v. Frazier*, 57 V.I. at 366.

guard shack have been located in the same position for at least the last twenty-eight (28) years.[91] At issue are the final two factors.

 Considering the reasonable necessity factor, Plaintiffs allege the easement is reasonably necessary for the enjoyment of the dominant estate because the location of a planter and sign marking the entrance to the resort relate to the use and enjoyment of the easement itself. Further, the Plaintiffs state that the entrance was placed in its current location to settle litigation over the location of the main entrance. It is clear that some access road, whether it remains at the current location or at Defendants' proposed new location, is necessary. Although it appears that the current location has been the only reasonable mode of accessing the dominant tenement for approximately the last three decades, this is no longer the case since the Defendants have proposed an alternate, readily available access road. As a result, the Plaintiffs do not have a reasonable probability of success in showing that the continuance of use is reasonably necessary to prove an implied easement.

The final factor requires the COA to demonstrate that Defendant MREI, the present owner of Parcels Nos. 16-1-2 and 16-1-6, had either actual or inquiry notice of the existence of the easements for the roadway, planter, sign, and guard shack. In order to establish notice of the existence of the unrecorded easement, the Plaintiffs rely on the preliminary injunction hearing testimony of Dean Morehouse, a principal for both Beachside and MREI. The Plaintiffs point to the fact that Mr. Morehouse purchased a condominium, Unit B209, in the late 1990's, used the present roadway on the top of the hill off Smith Bay Road, and was aware that a planter and guard shack were located there. (July 1, 2014, Tr. at 146, ll. 1-22, 147, ll. 1-6.) It is unclear whether Mr. Morehouse, in his private individual capacity, satisfies the notice requirement for Beachside and MREI simply because he is a principal for both. However, here, there is an additional independent basis for inquiry notice since Mr. Morehouse admitted that the Sapphire Bay West Settlement agreement, involving a requirement to relocate the entrance to its current location, was part of the title work done in connection with the acquisition of the mortgage on the

---

[91] The Court recognizes that although it appears undisputed that the use has been continuous, it would be premature to conclude that the continuous use automatically proves the use was intended to be permanent and burden subsequent owners.

Bayside property. (July 1, 2014, Tr. at 203, ll. 15-20.) Therefore, there was in fact inquiry notice.

After applying the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 and the majority rule to the facts of this case, even though the Plaintiffs have shown three of the four factors to be considered, the Plaintiffs have failed to prove reasonable necessity, the most critical factor, which is fatal to their claim.[92] As a result, the Plaintiffs do not have a reasonable probability of success on the merits for an implied easement.

## B. Express Easement

 Also without citing any binding legal authority, Plaintiffs proffer a standard for an express easement over Parcels Nos. 16-1 Remainder and 11 Remainder and posit that, when the dimensions of an easement are not defined, a "floating easement" is created. Historically, courts in the Virgin Islands have found that, although easements fall under the topic of property law, easements by deed are determined under the principals of contract law.[93] Therefore, in analyzing an express easement courts are required to determine if the easement satisfies the Statute of Frauds pursuant to 28 V.I.C. § 241, which requires a deed of conveyance or other instrument to be in writing.[94] However, it appears that the Virgin Islands Supreme Court has yet to consider the appropriate rule of law for interpreting express easements.

---

[92] *See, e.g.*, Comments, RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 2.12 (collecting cases).

[93] "[A]n easement deed . . . is, of course, a contract to be construed and enforced according to the principles of contract law." *Christmas v. Virgin Islands Water & Power Auth.*, 527 F. Supp. 843, 847, 18 V.I. 624 (D.V.I. 1981) (internal citation omitted). This easement is derived from the deed. *Olson v. Mee*, 8 V.I. 253, 257 (D.V.I. 1971).

[94] "(a) Except for a lease for a term not exceeding one year, no estate or interest in real property, and no trust or power over or concerning real property, or in any manner relating thereto, can be created, granted, assigned, transferred, surrendered, or declared, otherwise than —

(1) by operation of law; or

(2) by a deed of conveyance or other instrument in writing, signed by the person creating, granting, assigning, transferring, surrendering, or declaring the same, or by his lawful agent under written authority, and executed with such formalities as are required by law."

28 V.I.C. § 241.

### ii. *Banks* Analysis of the Restatement (Third) of Property (Servitudes) § 4.1

 Conducting a *Banks* analysis, the Court finds that the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1 is an expression of the common law of this jurisdiction and finds it proper to adopt and apply § 4.1 here. Considering the first *Banks* factor, whether any Virgin Islands courts have previously adopted a particular rule, it appears that no Virgin Islands jurisprudence exists addressing the specific requirements for interpreting a valid express easement. The RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1 provides that:

> (1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created.
>
> (2) Unless the purpose for which the servitude is created violates public policy, and unless contrary to the intent of the parties, a servitude should be interpreted to avoid violating public policy. Among reasonable interpretations, that which is more consonant with public policy should be preferred.

"Virgin Islands law, by way of Third Circuit decisions[95] requires that the easement itself be definite and certain before the Court can provide equitable relief pursuant to it."[96] "[I]n determining how specific an easement must be, the facts and circumstances should be considered."[97] "The person who asserts an easement has the burden of proving the existence of the easement."[98] "Once the party asserting the easement has made a *prima facie*

---

[95] *See, e.g., Wills v. Young*, 255 F.2d 65, 3 V.I. 674 (3d Cir. 1958); *Roebuck v. Hendricks*, 255 F.2d 211, 3 V.I. 680 (3d Cir. 1958).

[96] *Anderson v. Bryan*, 57 V.I. 134, 138 (V.I. Super. 2012) *on reconsideration in part*, 58 V.I. 181 (V.I. Super. 2013).

[97] *Id.* at 139; "An express easement continues regardless of whether the dominant estate needs the easement. Nonetheless, an easement may be extinguished by estoppel if the owner of the servient estate acts inconsistently with the easement's continued existence based upon a reliance that the owner of the dominant estate does not intend to make future use of the servient estate." 25 AM. JUR. 2D *Easements and Licenses* § 83.

[98] *Brodhurst v. Frazier*, 57 V.I. at 374 (Swan, J., dissenting) (citations omitted).

showing of its existence, the opponent bears the burden of negating its existence."[99]

██ ██ For the second *Banks* factor, the Court considers the position taken by a majority of the courts from other jurisdictions. An express grant by a deed, in writing, is the most common method of creating an easement.[100] The rule stated in the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1, that the easement should be interpreted based on the intention of the parties from the language of the instrument and surrounding circumstances, is the majority rule.[101] The "intent should be ascertained from a common-sense reading of the words against the background of the circumstances."[102] Express easements are typically created through contractual transactions, and the majority of other jurisdictions rely on the principles set forth in Chapter 9 of the Restatement Second of Contracts to determine the intent of the parties and the meaning of the terms.[103] However, "the question of the extent of an easement not specifically defined by the terms of the grant . . . has been uniformly regarded by the courts as one of fact, for the jury."[104] Further, "[b]ecause servitudes are interests in land, subject to the Statute of Frauds and the recording acts, heavy emphasis is placed on the written expressions of the parties' intent."[105] The Court finds it persuasive that it appears that a majority of jurisdictions have adopted common law principles similar to those outlined in the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1.

---

[99] *Id.* (citations omitted).

[100] THE LAW OF EASEMENTS & LICENSES IN LAND § 3:5.

[101] RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1, Comments (collecting cases).

[102] *Id.* Reporter's Comments d. (citing 3 AMERICAN LAW OF PROPERTY §§ 12.89-12.93, at 379-80 (Deeds, R.G. Patton) (Casner ed. 1952) (in general, the same rules are employed in construing deeds as are applied to contracts)); *see Jordan v. Guinn*, 253 Ark. 315, 485 S.W.2d 715, 52 A.L.R.3d 1 (1972); *Martone v. Prislupsky*, 269 A.D.2d 673, 705 N.Y.S.2d 83 (3d Dep't 2000); *Hunsdon v. Farrar*, 128 Vt. 410, 264 A.2d 809 (1970). 81 AM. JUR. PROOF OF FACTS 3D 199 (originally published in 2005).

[103] RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1, Comment d (collecting cases); "Sections 201 and 202 of the Restatement Second of Contracts provide rules for determining whose meaning prevails and rules in aid of interpretation . . . these sections can be applied to interpretation of expressly created servitudes." *Id.* Reporter's Comments d.

[104] 81 AM. JUR. PROOF OF FACTS 3D 199 (originally published in 2005).

[105] *Id.*

■ The third and most important *Banks* factor, which approach represents the soundest rule for the Virgin Islands, weighs strongly in favor of adopting the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1 as a reflection of common law in this jurisdiction. It is clear that to establish an express easement in the Virgin Islands, parties must execute their intentions in writing pursuant to 28 V.I.C. § 241, the Statute of Frauds, and comply with 28 V.I.C. § 124, the race-notice statute. What was unclear was the proper approach to take when interpreting an express easement. As previously discussed the majority of jurisdictions favor the position that an easement should be interpreted considering the intentions of the parties as derived from the language of the instrument, relying on contract principles to determine the ultimate purpose of the easement. As a result, weighing all of the *Banks* factors, the Court finds the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1 to be the soundest rule for this jurisdiction.

Plaintiffs have the burden of first proving the existence of the express easement pursuant to 28 V.I.C. § 241 and 28 V.I.C. § 124 before the Court is required to apply § 4.1. Defendant MREI is currently the owner of Parcels Nos. 16-1-2 and 16-1-6, "the Hillside Property," which Bayside owned at the time it recorded the Declaration of Condominium that created the COA. Parcels Nos. 16-1-2 and 16-1-6 are not identified as Sponsor's Property in the Declaration of Condominium (Defendants' Exhibit 1, Section 2.F). The road, sign, and planter were constructed in approximately 1988 when Bayside was still the owner, but Hill Sapphire, LLC, acquired title to the Hillside property in 2006 and MREI acquired title by deed in lieu of foreclosure in 2010. Defendant Beachside is presently the owner of Parcels Nos. 16-1 Remainder, 11 Remainder, and 11-N.

The Declaration of Condominium that created the COA (Defendants' Exhibit 1) establishes an easement over what is described as the Sponsor's Property in Paragraph 3.I.1:

> All Unit Owners shall have as an appurtenance to their Units (1) in order to insure their unrestricted right of access to and from their Units and the Public streets and highways bounding the Sponsor's Property the unrestricted right of access, on a non-exclusive basis, to and from their Units and all portions of the areas forming a part of the Recreational Facilities, from which Open Areas they will have direct access

through the Sponsor's Property to the public streets and highways bounding the Sponsor's Property.... (Defendants' Exhibit 38, pp. 12-13, Section 3.I.1).

"Sponsor's Property" is defined in Defendants' Exhibit 1, p. 7, Section 2.F:

"SPONSOR'S PROPERTY means the following real property: All those certain lots, pieces or parcels of land situate, lying and being in St. Thomas, United States Virgin Islands, and more particularly described as follows:

**Parcel No. 11-G**, [Parcel No. 11-J]. **Remainder Parcel No. 11**, Parcel No. 16-1-4, and **Remainder Parcel No. 16-1** Estate Smith Bay, Nos. 1, 2 and 3 East End Quarter, St. Thomas, U.S.V.I. owner by the Sponsor in fee simple absolute. Parcel No. 100 Estate Smith Bay, filled submerged land, and a portion of submerged land to the East of and adjoining the 'original shoreline' of Parcel No. 11-J Estate Smith Bay as channel for access to the Marina, both of which are leased from the Government of Virgin Islands under the Major Coastal Zone Permit No. CZT-106-84W."

Because the relevant Parcels are specifically included in the definition of "Sponsor's Property" and because the Declaration specifically describes an easement over the "Sponsor's Property", Plaintiff claim there can no relocation of the access roadway, lighted sign, planter, and guard shack without the consent of the COA.

Plaintiff having satisfied the first requirement of proving the existence of an express easement meeting the written requirements of 28 V.I.C. § 241 through the Declaration of Condominium, the Court is left with determining the intentions of the parties and the circumstances surrounding the creation of the easement in accordance with the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1.[106] Although the easements granted by Paragraph 3.I.1 of the Declaration are subject to an express limitation: "[t]he right of access may be altered or relocated to the

---

[106] Plaintiffs satisfied the first requirement only in terms of establishing an express easement for Parcels Nos. 16-1 Remainder and 11 Remainder. The Court recognizes that, although part of the access road is located on these parcels, the entrance to the access road off the public roadway is not. (Plaintiffs' Exhibit 14.)

extent the Sponsor decides to construct buildings or other facilities (including but not limited to condominium facilities) on any part of the Sponsor's Property . . . ," Plaintiffs argue that the proposed relocation is not being undertaken because of construction, but, instead, to accommodate access between two facilities operated by the local business "Off the Grid" on adjoining property owned by Defendant MREI.

Defendants respond that the roadway, sign, planter, and guard shack can be relocated because the easement described in the Declaration applies only to "Sponsor's Property," and not to the Hillside Property owned by Defendant MREI (Declaration at Paragraphs 2.F, 3.I.1). Defendants also claim that "fixing" a floating easement would not prevent MREI from relocating that easement, arguing that the COA has failed to present evidence that MREI or its predecessors intended to convey an easement over the Hillside Property. Further, the Defendants state that even if the COA did have a floating easement over the Hillside Property, "fixing" a floating easement through use would prevent the COA, not MREI, from relocating the easement.

Lastly, the Plaintiffs claim that relocation of the roadway would breach the terms of the settlement agreement between Bayside and Sapphire Bay West. The settlement was entered into because Sapphire Bay West wanted to change the entrance to reduce traffic. At the time of the settlement all of the property involved in this case was owned by Bayside. The Court admitted the settlement agreement at the hearing on July 1, 2014, for the limited purpose of introducing the terms for the relocation of the roadway. While it seems undisputed that, if Bayside was still the sole owner, changing the entrance back to its original location would breach the terms of the settlement, it remains unclear to the Court whether each of the parties involved in this litigation are successors to Bayside, with the settlement reported in the chain of title for each entity and their parcels.[107] Here, the settlement agreement is not determinative of the probability of success on the merits for the express easement, and the parties do not cite binding authority for the elements of a covenant running with the land.

Plaintiffs bear the burden of introducing evidence to establish each element of the cause of action upon which they claim a likelihood of

---

[107] The Plaintiffs in their Post-Hearing Brief, improperly cite to the agreement for the proposition that it is a covenant running with the land and is binding on all subsequent owners, including the COA, Beachside, and MREI. (Plaintiffs' Exhibit 4.)

success.[108] Plaintiffs correctly assert that there is an expressly deeded easement for ingress and egress over certain specifically defined parcels now owned by Beachside, but wrongly include the portions of the entrance road on the Hillside Property in this claim. It is clear from the evidence presented that the definition of "Sponsor's Property" does not include the specific Hillside Property Parcels where the entrance of the roadway, sign, planter, and guard shack are located. Therefore, Plaintiffs' argument that the proposed relocation is not being undertaken because of construction is irrelevant. Likewise, Plaintiffs' argument asserting a floating easement over Parcels Nos. 16-1 Remainder and 11 Remainder is also inappropriate to a claim involving the entire entrance road, as only a section of the road is on those parcels. Applying RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1, the intentions of the parties as stated in the Declaration of Condominium are clear and the Plaintiffs have failed to establish a reasonable probability of success on their claim for an express easement for the entire entrance road in its current location.[109]

### 2) Irreparable Harm

Plaintiffs must demonstrate that they will be irreparably injured by the denial of injunctive relief. Again, the Plaintiffs rely on non-binding authority, without stating why this Court should rely on that authority, for the assertion that when a party is denied its use of a property right, irreparable injury is presumed.[110] Defendants argue that the COA has failed to show that closing the driveway on the Hillside Property and redirecting traffic to an alternate, existing route to the property creates a risk of irreparable harm that justifies a preliminary injunction.

 Plaintiffs will not be irreparably injured by denial of the relief. While Defendants plan to close off the road and redirect traffic to a different road, Defendants clearly state that they do not intend to destroy the existing concrete driveway. Denying preliminary relief will not result in greater harm to the moving party as the road will not be destroyed and

---

[108] *Tip Top Constr. Corp.*, 60 V.I. at 732; *Gov't of V.I. v. V.I. Paving, Inc.*, 19 V.I. 177 (D.V.I. 1982) (noting the moving party must make a "clear showing" that they are entitled to injunctive relief).

[109] *Id.*

[110] *Frink v. North Carolina Board of Transportation*, 27 N.C. App. 207, 218 S.E.2d 713, 714 (1975).

the "damage" could be undone by simply re-opening the road. Plaintiffs will still have an entry and exit point to reach their properties.

In terms of the planter, sign, and guard shack at the entrance of the property, in their Post-Hearing Brief, the Defendants make clear that, once the access road is relocated, they have no objection to also relocating the lighted sign and guard shack to a mutually-agreed upon location on Beachside's property where these amenities can continue to serve their functions. Plaintiffs have failed to present evidence that relocation of the guard shack will cause any imminent and irreparable harm. Accordingly this factor weighs against granting injunctive relief.

### 3) Balancing the Harm to the Non-moving Party

The third factor for granting a preliminary injunction requires the Court to inquire into whether "granting preliminary relief will result in even greater harm to the nonmoving party."[111] Defendants argue Plaintiffs have failed to show that granting a preliminary injunction will avoid a harm to the Plaintiffs greater than the harm Defendants would suffer if an injunction were issued. It does not appear that the Defendants will suffer even greater harm if the Court grants the preliminary injunction, as this would simply maintain the status quo and keep the access road, lighted sign, planter, and guard shack in their current locations. However, the Defendants are harmed because they should be able to develop the currently burdened parcels without being restricted by the location of the access road, sign, planter, and guard shack. Accordingly, for the sole purpose of maintaining the status quo, this factor weighs in favor of granting the injunctive relief.

### 4) The Public Interest

The extraordinary remedy of injunction has public consequences that need to be considered in exercising the Court's sound discretion.[112] Although this dispute involves private parties, the public has access to the roadway in order to access the public beach. Defendants have demonstrated that relocating access to the property over a different, existing road that has a shallower, safer grade is necessary to improve

---

[111] *Bryan v. Fawkes*, 62 V.I. 19, 24 (V.I. Super. 2014).

[112] *Yusuf*, 59 V.I. at 847 (citation omitted).

202

safety, to eliminate traffic on the driveway, and to assist "Off the Grid," the current commercial user of the Hillside Property. Accordingly, this factor weighs against granting injunctive relief. After considering and balancing the relevant factors, the preliminary injunction based on the implied and express easement is denied.

## II. ACCESS TO PARKING

In their August 5, 2014, Post-Hearing Brief, Plaintiffs concede that the motion for injunctive relief regarding access to the historic parking area is now moot following admissions and concessions made by Beachside at the July 1, 2014, hearing concerning the number of parking spots that will be available. Every motion filed remains pending until "ruled upon, dismissed, or withdrawn."[113] A motion becomes moot when something occurs after a motion is filed that resolves the issues raised in that motion.[114]

Under the provisions of the V.I. CODE ANN. Tit. 29, § 230 (n), "one (1) off-street parking space shall be provided for each dwelling unit, transient guest room or other separate residential accommodation for individuals on any premises. . . ." At the July 1, 2014, hearing the Court heard testimony from the Defendants that there are 171 residential apartment units at the Sapphire Beach Resort and Marina requiring parking spaces pursuant to the statute. Defendants then introduced Exhibit 34, which showed that Beachside has allocated three hundred two (302) parking spaces for the COA and members of the general public. Paragraph thirty (30) of the Plaintiffs' August 5, 2014, First Amended Complaint asserts there are a total of 238 units and condominiums requiring parking spaces. Regardless of the discrepancy between the parties' calculations of the required number of parking spots, both parties establish that sufficient parking is to be provided. Consequently, Plaintiffs are correct that the motion has become moot regarding the parking area because a ruling on that portion of the motion will not have any effect. Further, even without considering the mootness, Plaintiffs' claim fails because it possesses no reasonable probability of success on the merits. The motion for preliminary injunctive relief is denied regarding parking.

---

[113] 56 AM. JUR. 2D *Motions, Rules, and Orders* § 31 (2010).
[114] *Der Weer v. Hess Oil Virgin Islands Corp.*, 60 V.I. 91, 99 (V.I. Super. 2014) (citations omitted).

## III. THE POOL DECK AREA

### 1. Reasonable Probability of Success on the Merits

Plaintiffs claim an express easement for unrestricted access to the pool, pool deck, and pool bar on Remainder Parcel No. 11, also known as Pettyclip Point, currently owned by Beachside.[115] Section 3.I.1(3) of the Declaration of Condominium provides:

> All Unit Owners shall have as an appurtenance to their Units . . . (3) unrestricted right of access to Prettyclip Point including [the] open air beach bar located thereon; subject, however, to the following express reservations and limitations. . . .

(Defendants' Exhibit I, Section 3.I.1) It is clear that Section 3.I.1(3) establishes an express easement pursuant to the Statute of Frauds requirements of 28 V.I.C. § 241. Applying the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 4.1, the Court must now consider the intention of the parties as it relates to the Pool Deck area. Plaintiffs argue that Beachside has obstructed the COA's easement for access to the pool deck and bar area by erecting plywood barriers in the vicinity of the restaurant and that Beachside has blocked access to some areas of the pool deck by placing kitchen equipment, chairs, and tables on the deck area. But, in their Post-Hearing Brief, Plaintiffs concede that there may be some justification for limited blockage for a limited period of time for the specific purpose of renovating the restaurant.

At the hearing Plaintiffs also cited the Declaration, Paragraph 3.I.1, Subsection 2, which grants unit owners a non-exclusive use of the recreational facilities.[116] The recreational facilities are defined in the Declaration, Paragraph 3.G.2, as the beaches that are part of Sponsor's Property Remainder Parcel No. 11 and Parcel No. 11-G. Further, in asserting that attribution of the obstructions on the deck area to a

---

[115] On December 18, 2013, following entry of a judgment of foreclosure concerning Remainder Parcel 11, Beachside purchased the property at a Marshal's sale. The property was formerly owned by Bayside Resort, Inc., and Beachside had held a first-priority mortgage.

[116] Relying on non-binding precedent, Plaintiffs maintain that the law is clear that a servient landowner may not effectively limit the use of an easement by placing obstructions amounting to "a material encroachment on the dominant owner's rights." *Pizzarelle v. Dempsey*, 259 Va. 521, 526 S.E.2d 260 (2000).

restaurant renovation is pretextual, Plaintiffs rely on Dean Morehouse's testimony, in which he is quoted as saying he placed the obstructions "because I can," and indicating that the easement area has been blocked since March, 2014, with no work being done. The Plaintiffs also identify in their post-hearing brief that to their knowledge no lease agreement with a restaurant operator has been signed. Finally, Plaintiffs argue the blockage is, instead, solely to inconvenience the COA and its members.

The Defendants respond by claiming that the COA cannot show that it is likely to succeed on the merits because the Declaration does not grant COA members an easement or other right that is violated by Beachside's temporary closure of some areas of the Pool Deck. Defendants recognize that in June of 1991 the pool and the land beneath it on Prettyclip Point became the property of the COA, pursuant to the Fourth Amendment to the Declaration, while the surrounding pool deck or pool bar remain the property of Beachside. Defendants cite the definition of "Recreational Facilities," in Paragraph 3.G of the Declaration, which includes: (1) the Tennis Courts; (2) the Beaches in certain named parcels (including Parcel 11 Remainder); and (3) a natural salt water swimming area. The Defendants argue that the COA's assertion that the pool deck is part of the beaches is contrary to the plain language of Paragraph 3.G.2.

Defendants claim that the fact that the pool bar is specifically mentioned in Paragraph 3.I.1(3) supports the conclusion that the pool bar and pool deck are not part of the "beach." Further, the Defendants point out that the express reservations and limitations of Paragraph 3.I.1(3) include subsection (f), which states that the Unit Owners' right of access, including the right to the pool bar, "may be altered or relocated to the extent that the Sponsor [Beachside] decides to construct buildings or other facilities (including but not limited to condominium facilities) on any part of the Sponsor's Property." Defendants maintain that construction necessary for repair of the pool bar requires temporary, limited closure of certain areas of the pool deck and that the pool is still accessible from other points. (July 1, 2014, Tr. at 175-76.)

██ Moreover, Defendants argue the COA is barred from recovery under the doctrine of unclean hands. "It is an ancient and established maxim of equity jurisprudence that he who comes into equity must come with clean hands. If a party seeks relief in equity, he must be able to show

that on his part there has been honesty and fair dealing."[117] At the hearing, Defendants provided testimony from Craig Cerny showing that he broke into the work area at the pool deck, destroyed barriers, trespassed on Beachside's property, and removed Beachside's personal property. (July 1, 2014, Tr. at 124-26.)

 Upon consideration of the evidence, it is clear the COA is the owner of the Pool and has an easement for ingress and egress to the Pool. However, because Paragraph 3.I.1(3) and Paragraph 3.I.1(f) of the Declaration do not include the pool deck and allow for restrictions on the easement for construction, the COA has failed to meet its burden of showing its right to an unrestricted easement to this area. Alternatively, even if the COA had met its burden, its claim on the merits is further weakened by the Defendants' argument based on the doctrine of unclean hands. Accordingly, although the Plaintiffs are not required to show that they will actually prevail on the merits, the Plaintiffs have failed to establish a reasonable probability of success.

### 2. Irreparable Harm

 At the preliminary injunction hearing, the Plaintiffs claimed that they will suffer irreparable harm through the intentional, unnecessary blockage of access to the pool area by the Defendants. The Defendants responded that the COA has not shown it is at risk of any imminent, irreparable harm resulting from these limited closures. Irreparable harm requires imminent harm for which a monetary award does not adequately compensate the damage.[118]

The closures are temporary and limited, and have been acknowledged by the Plaintiffs and the Defendants to have obvious benefit for its members. The Court received evidence that Marsha Heller, President of the COA, knew of Beachside's planned renovation and the related limited, temporary closures, but sent an email to COA members after this suit was filed in which she characterized the renovation as "exciting news" that was "of obvious benefit to [the COA]." In the same email she accepted the "mixed blessings" of temporary pool deck closures

---

[117] *Sunshine Shopping Ctr., Inc. v. KMart Corp.*, 85 F. Supp. 2d 537, 544, 42 V.I. 397 (D.V.I. 2000).

[118] *Yusuf*, 59 V.I. at 854.

necessary to complete the renovation. (July 1, 2014, Tr. at 40-42.) Defendants argue that the COA cannot prove irreparable harm when it had knowledge of the closures, sent an email to its members accepting that the closures were necessary in order to achieve a renovation, and failed to present evidence that the closures have caused any harm.

Further, the Defendants maintain that Plaintiffs' accusation that Defendants have prevented the COA from using the pool and other parts of the pool deck are inaccurate. Defendants provided the Court with photographs showing people using the pool and open access routes leading to the pool and pool deck area. (July 1, 2014, Tr. at 184-88; Defendants' Exhibits 5-11.) Accordingly, Plaintiffs have failed to present evidence to prove that the temporary closure of a portion of the pool deck will cause imminent and irreparable harm for which monetary compensation is not adequate. This factor weighs against granting injunctive relief.

### 3. Balancing the Harm to the Non-moving Party

The Plaintiffs assert that they have enjoyed unrestricted use of the restaurant and pool deck area from virtually the first day the resort was opened. Defendant Beachside responds that the balance of hardships weighs against granting a preliminary injunction because an injunction would seriously impair its ability to repair and reopen Beachside's pool bar. Additionally, an injunction would impair negotiations with the potential future operator of the pool bar. Further, a preliminary injunction allowing the COA and its guests unrestricted access to "sun themselves" in the limited areas of the pool deck that need to be closed for the repairs would force Beachside to halt, for an indefinite period, any plans to repair the pool bar. Beachside would be forced to make a construction site accessible to the public, exposing Beachside and the COA to potential liability. Therefore, the Plaintiffs have failed to show that granting a preliminary injunction will avoid a harm to the Plaintiffs greater than the harm Defendants would suffer if an injunction were issued. The balance of harms to the parties does not favor injunction relief.

### 4. Public Interest

Both parties agree that this is essentially a private dispute between the COA, Beachside, and MREI, over the scope of an easement. Defendants argue that to the extent there is any public interest in this private dispute,

Beachside's renovation of the pool bar will serve the public interest by generating income for Beachside, while providing a welcome amenity for the COA, its members and guests, as well as the general public. Defendants claim the only harm to the COA, its members, and the public if the injunction is not granted is that they will need to enter the pool from the beach instead of by cutting through the "lower level" and "bar level" of the pool deck. Accordingly, this factor does not favor injunctive relief because the closure is temporary and the public will still be able to access the pool and the eventual pool bar. After considering and balancing the remaining factors, the preliminary injunction requesting unrestricted access to the pool area is denied.

Plaintiffs further argue they are entitled to injunctive relief prohibiting Beachside from taking any action to impede the Plaintiffs from reconnecting power to the beach and pool security lights should Defendant Beachside elect not to reconnect them on its own. Because this claim is contingent on a future event or omission, the claim is not ripe for consideration[119] and the court declines to address it further.

## IV. ACCESS TO THE BEACH

 Finally, Plaintiffs requested injunctive relief mandating that Beachside immediately remove all obstructions and cease any action obstructing or impeding public access to the beach and areas of the open shoreline. In the August 5, 2014, Post-Hearing Brief, Plaintiffs concede that the issue is now moot because public access to the beach was being provided (p. 188, 1.24-189, 1.8). Defendants offered testimony from Dean Morehouse that Beachside had cleaned up routes of pedestrian access to the beach that previously had been overgrown, had maintained routes of beach access on both sides of the Seagrape Building, had not blocked beach access, and had not blocked access through the route referred to as "Easement AZ," which the COA described in its Complaint as the location of the access easement for the beach. (July 1, 2014, Tr. at 190-92.) Further, Defendants submitted five photographs of clear routes of pedestrian beach access and signs marking them. (Defendants' Exhibits 13-17.) Accordingly, Plaintiffs are correct that the issue of public beach access is moot because a ruling on the motion will not have any effect on

---

[119] *Tip Top Constr. Corp.*, 60 V.I. at 730.

either party or the public, and the motion for injunctive relief in relation to public beach access is denied.

## CONCLUSION

Based on the foregoing analysis, the Court concludes that the Plaintiffs have failed to demonstrate that they are entitled to the extraordinary remedy of a preliminary injunction for each of their claims.[120] Accordingly, the Court will deny the COA's request for preliminary injunctive relief. The Court will issue an order consistent with this Memorandum Opinion.

---

[120] While the Court did not combine the hearing for preliminary injunction with the hearing for declaratory relief, given the tactual findings in this memorandum opinion, the Court questions under what circumstances the Plaintiffs would be able to overcome the noted factual deficiencies to succeed on their claims for declaratory relief. Given the outcome of these motions, and considering that the contractors have not infringed on any property rights of the Plaintiffs, the parties may now wish to consider an informal resolution to the remaining claims.